WALLACE J. WHITE AND WIFE, VIRGINIA M. WHITE; D. L. TILLEY; J. B. SELF, JR.; DAVID A. NORRIS; PAGE C. KEEL, SR. AND WIFE, BETTY G. KEEL; JARVIS B. BRITTEL v. TOWN OF EMERALD ISLE

No. 863SC129

(Filed 5 August 1986)

**Deeds § 20.1— subdivision restrictive covenants—beach access walkway and parking— no violation**

Restrictive covenants did not prohibit defendant's plan for a free, fourteen-space public parking lot and pedestrian ramp providing public beach access where the language of the covenants reserved the right to erect or have erected a walkway, lifeguard stations or stands and other structures commonly associated with the use of ocean beaches and intended primarily for the convenience and safety of persons entitled to use the beach; furthermore, the covenants also specifically allowed hotels, motels and apartment houses and it is common knowledge that parking areas, parking lots and pedestrian ramps providing beach access are incidental to hotels, motels and apartment houses constructed on oceanfront lots.

APPEAL by plaintiffs from *Reid, Judge.* Order entered 6 November 1985 in Superior Court, CARTERET County. Heard in the Court of Appeals 5 June 1986.

Defendant-Town is the owner of three contiguous oceanfront lots in Block Two of Emerald Isle by the Sea as shown on a map recorded in Map Book 3, page 56 in the Carteret County Register of Deeds office. As part of a state program for public use and access to the ocean beaches and public trust areas, defendant-Town applied for and secured a grant for the construction of a public beach access on these three lots. Accordingly, it now seeks to construct on these lots a parking lot and a pedestrian ramp providing public beach access. The parking lot would provide space for fourteen cars. There would be no charge for use of the lot and it would not be operated in conjunction with any commercial use.

Plaintiffs are owners of lots in Blocks One and Two of Emerald Isle by the Sea. Blocks One and Two are subject to restrictive covenants which provide, in pertinent part:

The hereinbefore described property shall be used only for residential purposes and no business or commercial activity shall be engaged in or conducted thereupon except hotels, motels, apartment houses or other buildings for the purpose of providing residence.

The written consent of the owner . . . must be obtained prior to the construction of a hotel, motel or apartment or multiple family dwelling or building, except a duplex or two-family buildings.

. . . .

1.

The ocean beach shall be used only for a recreational area, surf bathing and other uses which are commonly associated with and incidental to the use of ocean beaches.

2.

The ocean beach is to be used by and the use limited to the owners of [all property] located in Blocks Numbers One (1) through Twelve (12), inclusive, of Emerald Isle By-the-Sea. The use of said beach is also extended to those persons who are specifically invited upon the said beaches by those persons owning land within the said Blocks Numbered One (1) through Twelve (12).

. . . .

4.

There is reserved the right to erect or have erected upon the said ocean beach by the Trustee [First Citizens Bank], its successors, assigns or agents, a walkway, commonly known as a boardwalk, [lifeguard] stations or stands and other structures which are commonly associated with the use of ocean beaches and are designated, designed and intended primarily for the [convenience] and safety of persons entitled to use the said beach.

Plaintiffs seek to enjoin defendant-Town, temporarily and permanently, from constructing a parking lot and pedestrian ramp on its property. The trial court concluded that "the use of the Defendant Town's property for a non-commercial parking lot for not more than 14 parking spaces is not a violation of the Protective Covenants in question." Accordingly, it granted defendant-Town's motion for summary judgment. Plaintiffs appeal.

*H. Buckmaster Coyne, Jr. for plaintiff appellants.*

*Stanley and Simpson, by Richard L. Stanley, for defendant-Town.*

WHICHARD, Judge.

Plaintiffs contend the court erred in granting summary judgment in favor of defendant-Town. Specifically, they contend that the restrictive covenants to which defendant-Town's property in Block Two is subject prohibit its use as a municipal parking lot with a ramp providing beach access. Accordingly, they contend that the court should have granted summary judgment in their favor. We hold that the court properly entered summary judgment for defendant-Town.

In general, a defendant

[i]s entitled to summary judgment only if he can produce a forecast of evidence, which, when viewed most favorably to plaintiff, would, 'if offered by plaintiff at the trial, without more, . . . compel a directed verdict' in defendant's favor. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 473, 251 S.E. 2d 419, 423 (1979). In other words, if the forecast of evidence available for trial, as adduced on the motion for summary judgment, demonstrates that plaintiff will not at trial be able to make out at least a *prima facie* case, defendant is entitled to summary judgment. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E. 2d 325 (1981). In such cases there is no genuine issue of material fact. *Moore v. Fieldcrest Mills, Inc., supra.*

*Smith v. Assoc. for Retarded Citizens*, 75 N.C. App. 435, 438-39, 331 S.E. 2d 324, 326 (1985), *quoting Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982). We thus must first determine the use restrictions imposed by the restrictive covenants and then determine whether the forecast of evidence presents any issue of material fact as to whether defendant-Town's plans violated those covenants. *Id.*

In regard to the construction of restrictive covenants, our Supreme Court has stated generally that:

While the intentions of the parties to restrictive covenants ordinarily control the construction of the covenants, . . . such

covenants are not favored by the law, . . . and they will be strictly construed to the end that all ambiguities will be resolved in favor of the unrestrained use of land. . . . The rule of strict construction is grounded in sound considerations of public policy: It is in the best interests of society that the free and unrestricted use and enjoyment of land be encouraged to its fullest extent. . . . Even so, we pause to recognize that clearly and narrowly drawn restrictive covenants may be employed in such a way that the legitimate objective of a development scheme may be achieved. Provided that a restrictive covenant does not offend articulated considerations of public policy or concepts of substantive law, such provisions are legitimate tools which may be utilized by developers and other interested parties to guide the subsequent usage of property.

. . . each part of the covenant must be given effect according to the natural meaning of the words, provided that the meanings of the relevant terms have not been modified by the parties to the undertaking. . . . [Citations omitted.]

*Smith*, 75 N.C. App. at 439-40, 331 S.E. 2d at 326, *quoting Hobby & Son v. Family Homes*, 302 N.C. 64, 274 S.E. 2d 174 (1981). *See also Long v. Branham*, 271 N.C. 264, 268, 156 S.E. 2d 235, 238-39 (1967). "The question whether the use of premises for parking purposes infringes a restriction forbidding business use or limiting to residential purposes is dependent upon the particular language used." 20 Am. Jur. 2d Covenants Sec. 220 at 788.

Examining the restrictive covenants here, the trial court concluded:

[I]t appears to be the intention of the original developers executing the Protective Covenants that the Covenants are generally applicable to a residential resort subdivision intended primarily for residential use, but with recreational, surf bathing and other recreational uses being clearly incidental to the use of recreational properties. It also appears to be the intention of the original developers from a review of the Covenants that they were cognizan[t] that many people would be frequenting the ocean beaches, and that owners and their guests, renters and other invitees would be using the dwellings and property subject to the covenants. (Hotels,

motels, apartments and other multiple family dwellings were also contemplated within the property subject to the covenants so that it appears from a review of the covenants that the original developers did not intend to create a private, exclusive residential subdivision. Clearly incidental to the use of residential dwellings, hotels, motels, apartment houses or other buildings for the purpose of providing residences, would be parking areas and parking lots.)

We agree with the trial court's analysis, and we hold accordingly that the restrictive covenants do not prohibit defendant-Town's plan for a free, fourteen-space public parking lot and pedestrian ramp providing public beach access. Our holding is substantially influenced by application of the rule that restrictive covenants must be strictly construed in favor of the unrestrained use of land, *Smith, supra,* to the language of paragraph four of the covenants, which "reserved the right to erect or have erected . . . a walkway, . . . [lifeguard] stations or stands and other structures which are commonly associated with the use of ocean beaches and are designated, designed and intended primarily for the [convenience] and safety of persons entitled to use the said beach." It is common knowledge, of which this Court can take judicial notice, *Opsahl v. Pinehurst, Inc.,* 81 N.C. App. 56, ---, 344 S.E. 2d 68, 77 (1986), that parking lots and pedestrian ramps are "commonly associated with the use of ocean beaches." The uncontroverted forecast of evidence establishes that the proposed parking lot and pedestrian ramp here "are designed and intended primarily for the convenience and safety of persons entitled to use the . . . beach." Therefore, a strict construction in favor of the unrestrained use of land requires a holding that it was not the intention of the original developers that these structures should be precluded by the restrictions on use of the property to residential purposes.

This holding is consistent with prior decisions. In *Long, supra,* plaintiff lot owners sought to restrain defendant lot owner from constructing a street within the parties' subdivision which would connect a street in their subdivision with an adjoining subdivision. The Court held that the restrictive covenants covering the subdivision precluded the road proposed by defendant. 271 N.C. at 274, 156 S.E. 2d at 243. Examining the covenants, the Court concluded that the developers and purchasers of lots in the

subdivision understood that "any use of a lot in the subdivision for a road or right-of-way would violate the restrictions against non-residential use . . . ." *Id.* Specifically, the Court reasoned:

> The map of Timbercrest reveals a small, tight subdivision through which only one street, Timberly Drive, meanders. It is quite obvious that its developer and those who purchased lots therein did not contemplate that Timberly Drive should ever become a thoroughfare which would carry traffic from another subdivision. Their objective was a quiet, residential area in which the noise and hazards of vehicular traffic would be kept at a minimum and in which children could play with relative safety.

*Id.* at 274-75, 156 S.E. 2d at 243.

The restrictive covenants here, unlike those in *Long*, specifically allow hotels, motels and apartment houses. Courts take judicial notice of subjects and facts of common knowledge. *Opsahl, supra.* It is common knowledge that parking areas and parking lots and pedestrian ramps providing beach access are incidental to hotels, motels and apartment houses constructed on oceanfront lots. Further, the restrictive covenants specifically provide for the erection of "walkways." Accordingly, plaintiffs and other purchasers of lots in Blocks One and Two of Emerald Isle by the Sea must have understood that the restrictive covenants did not preclude construction of a parking lot or pedestrian ramp. *See Long*, 271 N.C. at 274, 156 S.E. 2d at 243.

We note that Courts in other jurisdictions have held that a municipal parking lot does not violate restrictions against non-residential use. *See, e.g., Burton v. Douglas County*, 65 Wash. 2d 619, 399 P. 2d 68 (1965); *Town of Eastchester v. Koch*, 282 App. Div. 748, 122 N.Y.S. 2d 526 (1953). *Cf. Gordon v. Incorporated Village of Lawrence*, 84 App. Div. 2d 558, 443 N.Y.S. 2d 415 (1981), *aff'd*, 56 N.Y. 2d 1003, 453 N.Y.S. 2d 683 (1982). We note further that we are not confronted with an issue involving the use of a lot restricted to residential purposes as a parking lot for an adjoining business or commercial establishment. *See Tull v. Doctors Building, Inc.*, 255 N.C. 23, 120 S.E. 2d 817 (1961); *Mills v. Enterprises Inc.*, 36 N.C. App. 410, 244 S.E. 2d 469, *disc. rev. denied*, 295 N.C. 551, 248 S.E. 2d 727 (1978).

Plaintiffs contend the court erred in making findings of fact not supported by the evidence. In *Mosley v. Finance Co.*, 36 N.C. App. 109, 111, 243 S.E. 2d 145, 147, *disc. rev. denied*, 295 N.C. 467, 246 S.E. 2d 9 (1978), this Court stated:

> A trial judge is not required to make finding[s] of fact and conclusions of law in determining a motion for summary judgment, and if he does make some, they are disregarded on appeal. Shuford, N.C. Practice and Procedure, Sec. 56-6 (1977 Supp.). Rule 52(a)(2) does not apply to the decision on a summary judgment motion because, if findings of fact are necessary to resolve an issue, summary judgment is improper. However, such findings and conclusions do not render a summary judgment void or voidable and may be helpful, if the facts are not at issue and support the judgment. *Insurance Agency v. Leasing Corp.*, 26 N.C. App. 138, 215 S.E. 2d 162 (1975).

The findings here thus do not render the summary judgment void or voidable. Indeed, given the nature of the case, in this instance they are helpful.

Affirmed.

Judges WEBB and JOHNSON concur.