580 S.E.2d 163

**Dr. Treadwell CAMPBELL, Appellant,**

v.

**MARION COUNTY HOSPITAL DISTRICT, d/b/a the Mullins Hospital, Respondent.**

No. 3620.

Court of Appeals of South Carolina.

Heard March 12, 2003.

Decided March 31, 2003.

Rehearing Denied May 21, 2003.

276

Brenda Reddix Smalls, of Columbia, for Appellant.

Ralph W. Barbier and Joseph M. Kahn, both of Columbia, for Respondent.

ANDERSON, J.

Dr. Treadwell Campbell (Dr. Campbell) sued Marion County Hospital District, d/b/a The Mullins Hospital (the Hospital), under the South Carolina Freedom of Information Act (FOIA) for information including, among other things, salaries, compensation, benefits, and bonuses offered to all physicians recruited by the Hospital, as well as the prices paid for physician practices purchased by the Hospital. The Circuit Court ordered the Hospital to disclose a portion of the requested information, but it further held that information regarding physicians' salaries, compensation, and purchase

prices of practices were "trade secrets." We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL BACKGROUND

In relation to a pending lawsuit, Dr. Campbell requested that the Hospital produce certain information pursuant to the FOIA. Specifically, Dr. Campbell requested the Hospital provide information regarding: (1) the compensation, benefits, and bonuses offered to physicians recruited by the Hospital from 1988 to 1999; (2) the prices paid for the purchase of physician practices; (3) the salaries of physicians whose practices were purchased by the Hospital; (4) the salaries of specific physicians; (5) the amount of rent paid to physician practices since 1988; and (6) the purchase price and a copy of the invoice of purchase if the Hospital purchased the Marion Medical Group. The Hospital indicated it would provide the information regarding the amount of rent paid to any physician or physician practice since 1988, but Dr. Campbell would have to post a deposit of $1,500 to cover the expenses of researching and copying the information. The Hospital refused to provide any of the other information stating information regarding physicians recruited, but not employed, by the Hospital was incidental to proposed contractual arrangements and thus exempt from disclosure. The Hospital asserted the requested information regarding physicians' salaries and the purchase prices of physician practices constituted "trade secrets" which were exempt from disclosure under the FOIA.

Dr. Campbell sued the Hospital under the FOIA, requesting that the Circuit Court (1) deem the withheld information to be public information within the meaning of the FOIA; (2) enjoin the Hospital from withholding the information; and (3) award Dr. Campbell costs and attorney's fees. The Hospital denied the allegations of the complaint and maintained the allegations failed to state a claim upon which relief could be granted. With the exception of the amounts of physician lease fees, the Hospital averred the requested information was exempt from disclosure as "trade secrets." Both parties moved for summary judgment.

After hearing arguments from both parties, the Circuit Court judge issued an order: (1) finding the information

regarding physicians recruited, but not actually hired, by the Hospital was exempt from disclosure; (2) requiring the Hospital to produce the information relating to physicians' salaries and the purchase price of practices, but barring Dr. Campbell from disclosing the information to third parties; (3) directing the Hospital to disclose information relating to the rents paid to physician practices; (4) compelling Dr. Campbell to pay a $500 deposit to cover the costs of providing the information; and (5) concluding Dr. Campbell was not entitled to attorney's fees. Dr. Campbell filed a Rule 59(e), SCRCP, motion for reconsideration, which was denied by the Circuit Court.

## ISSUES

I. Did the Circuit Court err in holding that Dr. Campbell's request for disclosure of physicians' salaries, bonuses, compensation, and purchase prices of physician practices constituted "trade secrets" requiring a protective order?

II. Did the Circuit Court err in refusing to award attorney's fees and costs to Dr. Campbell where he prevailed and the court ordered the production of all the information requested from the Hospital?

## STANDARD OF REVIEW

Although Dr. Campbell filed a motion for summary judgment, he actually requested the Circuit Court to declare whether the withheld information was exempt under the FOIA.

■ Declaratory judgments in and of themselves are neither legal nor equitable. *See Felts v. Richland County,* 303 S.C. 354, 400 S.E.2d 781 (1991); *Wiedemann v. Town of Hilton Head Island,* 344 S.C. 233, 542 S.E.2d 752 (Ct.App. 2001). The standard of review for a declaratory judgment action is therefore determined by the nature of the underlying issue. *Doe v. South Carolina Med. Malpractice Liab. Joint Underwriting Ass'n,* 347 S.C. 642, 557 S.E.2d 670 (2001); *Wiedemann,* 344 S.C. at 236, 542 S.E.2d at 753; *see also Travelers Indem. Co. v. Auto World,* 334 S.C. 137, 511 S.E.2d 692 (Ct.App.1999) (suit for declaratory judgment is neither

legal nor equitable, but is determined by nature of underlying issue).

▮ A declaratory judgment action under the FOIA to determine whether certain information should be disclosed is an action at law. *See South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.*, 316 S.C. 163, 447 S.E.2d 843 (1994). In an action at law tried without a jury, the appellate court standard of review extends only to the correction of errors of law. *Crary v. Djebelli*, 329 S.C. 385, 496 S.E.2d 21 (1998); *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976); *Okatie River v. Southeastern Site Prep*, 353 S.C. 327, 577 S.E.2d 468 (App.2003). Thus, the trial court's factual findings will not be disturbed on appeal unless a review of the record discloses that there is no evidence which reasonably supports the judge's findings. *Harkins v. Greenville County*, 340 S.C. 606, 533 S.E.2d 886 (2000); *Townes*, 266 S.C. at 86, 221 S.E.2d at 775; *Barnacle Broad., Inc. v. Baker Broad., Inc.*, 343 S.C. 140, 538 S.E.2d 672 (Ct.App.2000).

## *LAW/ANALYSIS*

### I. The Freedom of Information Act (FOIA)

The South Carolina Freedom of Information Act is codified as sections 30–4–10 to –165 in the South Carolina Code. *See* S.C.Code Ann. §§ 30–4–10 to –165 (1991 & Supp.2002). The FOIA provides:

> The General Assembly finds that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy. Toward this end, provisions of this chapter must be construed so as to make it possible for citizens, or their representatives, to learn and report fully the activities of their public officials at a minimum cost or delay to the persons seeking access to public documents or meetings.

S.C.Code Ann. § 30–4–15 (1991).

▮ The essential purpose of the FOIA is to protect the public from secret government activity. *Wiedemann v. Town of Hilton Head Island*, 330 S.C. 532, 500 S.E.2d 783 (1998);

*South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.,* 316 S.C. 163, 447 S.E.2d 843 (1994); *Bellamy v. Brown,* 305 S.C. 291, 295, 408 S.E.2d 219, 221 (1991); *see also Quality Towing, Inc. v. City of Myrtle Beach,* 345 S.C. 156, 547 S.E.2d 862 (2001) (the FOIA was enacted to prevent the government from acting in secret). "South Carolina's FOIA was designed to guarantee the public reasonable access to certain activities of the government." *Fowler v. Beasley,* 322 S.C. 463, 468, 472 S.E.2d 630, 633 (1996). The FOIA is remedial in nature and should be liberally construed to carry out the purpose mandated by the legislature. *Quality Towing, Inc. v. City of Myrtle Beach,* 345 S.C. 156, 547 S.E.2d 862 (2001); *South Carolina Dep't of Mental Health v. Hanna,* 270 S.C. 210, 241 S.E.2d 563 (1978).

Section 30–4–30(a) of the South Carolina Code provides: "Any person has a right to inspect or copy any public record of a public body, except as otherwise provided by § 30–4–40, in accordance with reasonable rules concerning time and place of access." S.C.Code Ann. § 30–4–30(a) (1991). The Hospital falls within the definition of "public body" as set forth in § 30–4–20(a), so as to render the FOIA applicable. *See* S.C.Code Ann. § 30–4–20(a) (1991) (defining "public body").

 The FOIA meets " 'the demand for open government while preserving workable confidentiality in governmental decisionmaking.' " *Bellamy v. Brown,* 305 S.C. 291, 295, 408 S.E.2d 219, 221 (1991) (quoting *Chrysler Corp. v. Brown,* 441 U.S. 281, 292, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979)). The FOIA creates an affirmative duty on the part of public bodies to disclose information. *Bellamy,* 305 S.C. at 295, 408 S.E.2d at 221. The purpose of the Act is to protect the public by providing for the disclosure of information. *Id.* However, the exemptions from disclosure contained in §§ 30–4–40 and 30–4–70 do not create a duty of nondisclosure. *Id.* These exemptions, at most, simply allow the public agency the discretion to withhold exempted materials from public disclosure. *Id.*

## II. Trade Secrets

 Dr. Campbell contends the Circuit Court erred in finding information relating to physicians' salaries, compensation, and the purchase price of physician practices amounted

to "trade secrets" necessitating protection from disclosure.[1] We agree.

At trial, the Hospital argued that physicians' salaries and prices paid for practices constituted "trade secrets" because, as a rural county hospital, it needed to keep the information private in order to attract qualified physicians and to compete with wealthier, urban areas. At the summary judgment hearing, Dr. Campbell submitted affidavits from Irance Collins, M.D., and Lewis W. Mustard, Ph.D., regarding the different factors physicians consider in deciding where to practice. Collins, a physician in Rocky Mount, North Carolina, declared that his primary considerations in selecting a hospital for "affiliation and contractual engagement in a rural area" included: "1. Environment; 2. Schools; 3. Support from the hospital staff; 4. Opportunity for expansion; 5. Compensation and benefits; 6. Diversity of the community practice; [and] 7. Patient and proximity to healthcare teaching facilities."

In his affidavit, Mustard, the Chief Executive Officer and President of Healthcare Negligence Control, Inc., in Chapel Hill, North Carolina, stated:

> Based upon my experience in the medical field, when physicians are deciding on where to establish their practices, or what hospitals they will work for, they consider a variety of enticements. These factors include whether the area is rural or urban, other healthcare facilities in the area, the quality of the schools in the area, the quality of emergency service, and the hospital resolutions. Compensation, bonuses, and benefits are three of several other requisite factors that physicians consider.

According to Mustard, because physicians consider so many factors, the release of information regarding compensation, bonuses, and benefits paid to physicians as well as purchase prices of physician practices would not impede a hospital's ability to recruit and retain physicians or to compete with other area hospitals. Mustard professed that public policy is furthered by disclosing information regarding compensation, bonuses, benefits, and purchase prices of physician practices

---

1. Dr. Campbell does not appeal the Circuit Court's finding that information relating to physicians recruited, but not actually hired, is exempt from disclosure under the FOIA.

paid by public hospitals. He declared that public policy favors disclosing information as to how the taxpayers' money is spent, as the public has the right to be informed and governmental agencies must be held to some level of accountability. Mustard explained that information as to the compensation, bonuses, and benefits, as well as purchase prices of physician practices paid by public hospitals is generally disclosed under the FOIA. He said that such information does not constitute commercially valuable plans or processes; work products, in whole or in part collected or produced for sale or resale; competitive information; formula, pattern compilation, program, method or process that derives independent economic value to the hospital; or valuable information to a hospital, giving it the opportunity to obtain a significant advantage over its competition.

After considering the parties' arguments, the Circuit Court ordered the disclosure of the information relating to physician salaries and purchase prices of practices. However, the court noted the requirements of the "trade secret" exemption to the FOIA in prohibiting Dr. Campbell from further disclosing the information:

> [Dr. Campbell's] request for information relating to salaries paid to physicians employed by the [Hospital] and the purchase price paid by the [Hospital] for physician practices raises a novel issue in South Carolina as to whether such information falls within the trade secrets exemption as defined under S.C.Code Ann. § 30–4–40(a)(1)....

> This Court finds that the [Hospital] is a public body that markets services in competition with others. This Court further recognizes that the healthcare industry is a very competitive industry and that a public hospital such as the [Hospital] could be at a disadvantage in the recruitment and retention of physicians if information relating to physician salaries and purchase prices paid for physician practices is made public. However, this Court notes that there is no South Carolina precedent in which physician salaries and prices paid for physician practices have been found to be "competitive information." Therefore, this Court orders that the [Hospital] produce the information requested by [Dr. Campbell] relating to physician salaries and the prices

paid by the [Hospital] for physician practices with the following limitations:

[Dr. Campbell] shall not disclose to anyone not [a] party or legal counsel to the parties in the case pending between [Dr. Campbell] and the [Hospital] in the Circuit Court for Marion County, Case No. 99–CP–33–394, any information produced by the [Hospital] relating to physician salaries and prices paid for physician practices.

In its order denying Dr. Campbell's motion for reconsideration, the Circuit Court further clarified its findings:

This Court finds that the [Hospital] is a public body that markets services in competition with others. This Court further recognizes that the healthcare industry is a very competitive industry and that a public hospital such as the [Hospital] could be at a disadvantage in the recruitment and retention of physicians if information relating to physician salaries and purchase prices paid for physician practices is made public. Although this Court notes that there is no South Carolina precedent in which physician salaries and prices paid for physician practices have been found to be "competitive information," *I am persuaded by the [Hospital's] argument that such information may constitute "trade secrets" as defined under S.C.Code Ann. § 30–4–40(a)(1).* Therefore, this Court rejects [Dr. Campbell's] contention that it was improper for this Court to order the [Hospital] to produce this information under a protective order. (Emphasis added).

The FOIA provides that any person has a right to inspect or copy "any public record of a public body" unless an exemption listed in § 30–4–40 applies. *South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.,* 316 S.C. 163, 447 S.E.2d 843 (1994); S.C.Code Ann. § 30–4–30(a) (1991); *see also Beattie v. Aiken County Dep't of Soc. Servs.,* 319 S.C. 449, 462 S.E.2d 276 (1995) (observing the FOIA provides the right to inspect or copy any public record of a public body; however, the FOIA enumerates certain exemptions). Matters which public bodies may, but are not required to, exempt from disclosure under the FOIA include "trade secrets":

Trade secrets, which are defined as unpatented, secret, commercially valuable plans, appliances, formulas, or pro-

cesses, which are used for the making, preparing, compounding, treating, or processing of articles or materials which are trade commodities obtained from a person and which are generally recognized as confidential; and work products, in whole or in part collected or produced for sale or resale, and paid subscriber information. *Trade secrets also include, for those public bodies who market services or products in competition with others, feasibility, planning, and marketing studies, and evaluations and other materials which contain references to potential customers, competitive information, or evaluation.*

S.C.Code Ann. § 30–4–40(a)(1) (1991 & Supp.2002) (emphasis added). Additionally, the FOIA allows a public body to exempt from disclosure all compensation paid to employees unless the employee receives "compensation of fifty thousand dollars or more annually." S.C.Code Ann. § 30–4–40(a)(6)(A) (1991 & Supp.2002).

The Federal FOIA exempts "trade secrets" from disclosure. It states that the disclosure requirements of the FOIA do not apply to matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4) (1996). The phrase "trade secrets" is not defined in the Federal FOIA. However, cases interpreting the section have defined a "trade secret" for the purposes of the FOIA as a " 'secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort.' " *Center for Auto Safety v. National Hwy. Traffic Safety Admin.*, 244 F.3d 144, 150–51 (D.C.Cir. 2001); *Herrick v. Garvey*, 298 F.3d 1184, 1190 (10th Cir.2002).

Although the Federal courts have interpreted "trade secrets" to mean something of commercial benefit in preparing commodities for the market, South Carolina courts have never directly addressed the "trade secret" exemption to the FOIA. We must first look at the plain meaning of "trade secrets" in the statute in order to determine whether salaries, compensation and purchase prices of physician practices constitute "trade secrets." Salaries, compensation, and purchase prices of practices do not constitute unpatented, secret, commercially valuable plans or processes used for making, preparing, or

processing trade commodities obtained from a third party. *See* S.C.Code Ann. § 30–4–40(a)(1) (1991 & Supp.2002). This information does not qualify as work product collected for sale or resale or paid subscriber information. *See* § 30–4–40(a)(1).

The statute specifically defines "trade secrets" for public bodies, such as the Hospital, that market services. "Trade secrets" include "feasibility, planning, and marketing studies, and evaluations and other materials which contain references to potential customers, competitive information, or evaluation." S.C.Code Ann. § 30–4–40(a)(1) (1991 & Supp.2002). It is evident from reading the entire "trade secret" section that the legislature intended the "trade secret" exemption to protect an organization's studies or preparations in its quest to produce or sell its product or service to "potential customers," not in its internal quest to obtain employees. Compensation and salary information regarding physicians and the purchase price of physician practices indubitably do not meet this unambiguous definition. Concomitantly, the Circuit Court erred in finding the information constituted "trade secrets" that mandated protection.

■ Furthermore, the information Dr. Campbell sought regarding physicians' salaries, compensation, and the purchase price of physician practices was not exempt under other subsections. The legislature specifically noted that FOIA requests for salaries "of fifty thousand dollars or more annually" were not exempt. S.C.Code Ann. § 30–4–40(a)(6)(A) (1991 & Supp.2002). The Hospital admitted that most of its physicians made more than $50,000 in compensation. A clear application of the entire exemption statute, as a whole, demonstrates that the information sought by Dr. Campbell was not exempt.

■ We next turn to whether the Circuit Court erred in prohibiting Dr. Campbell from further disclosing the information regarding salaries, compensation and purchase prices of physician practices. The purpose of the FOIA is to keep the public informed and to protect the public from secret government activity. Section 30–4–15 indicates the FOIA should be construed in favor of allowing citizen access to the public body's information. *See* S.C.Code Ann. § 30–4–15 (1991).

■ Information obtained pursuant to the FOIA from a public body is not protected by a restraining order. In fact, the South Carolina Attorney General's 1998 "Public Official's Guide to Compliance with South Carolina's Freedom of Information Act," states the FOIA must be construed "liberally to carry out its intent that citizens obtain public information at the least cost, inconvenience, or delay. Consistent with this mandate, my Office has adopted the following guiding principles in opinions construing the FOIA: When in doubt, disclose...." Liberally construing the statute, it is luculent that information obtained pursuant to the FOIA is for the protection of the public in general, not just the individual seeking the information. There is no provision in the FOIA allowing the disclosure to be subject to a protective order.

Moreover, an evidentiary review reveals that a protective order was not necessary. Evidence in the record shows that physicians' salaries, compensation, and the potential purchase price for practices are only three of many considerations a potential employee looks to in deciding where to practice. Therefore, disclosure of that information would not impede a hospital's efforts to hire. Accordingly, we find the Circuit Court erred in prohibiting Dr. Campbell from further disclosing information regarding physicians' salaries, compensation, and purchase prices of physician practices obtained pursuant to the FOIA.

In summary, the Circuit Court correctly granted Dr. Campbell access to the information regarding physician compensation and prices for physician practices. The Circuit Court erred in finding this information constituted "trade secrets" and in granting a protective order of the disclosure of the information.

### III. Attorney's Fees

■ Dr. Campbell claims the Circuit Court abused its discretion in denying his request for attorney's fees and costs when he was the prevailing party.

In denying Dr. Campbell's request for attorney's fees and costs, the Circuit Court held:

It is within this Court's discretion to award attorney's fees in an action brought under the South Carolina Freedom of

Information Act. This Court finds that the [Hospital] made a good-faith argument under the law to support its objection relating to [Dr. Campbell's] request for information. The [Hospital] raised legitimate concerns about the disclosure of sensitive information and the effect such disclosure could have on its ability to compete in a competitive marketplace. Therefore, the Court denies Dr. Campbell's request for attorney's fees.

In its order denying Dr. Campbell's motion for reconsideration, the Circuit Court reiterated its reasoning that the Hospital made a good-faith argument against disclosure of the information. The court stated that only a part of the information originally sought by Dr. Campbell was actually ordered to be disclosed.

Inferentially, the order of the Circuit Court indicates Dr. Campbell sought information regarding proposed compensation of physicians recruited, but not hired, by the Hospital. The court found this information exempt from the FOIA under S.C.Code Ann. § 30–4–40(a)(5) regarding documents incidental to proposed contractual arrangements. Although Dr. Campbell's complaint requests the information on physicians recruited by the Hospital, it does not specify whether he sought information on physicians recruited but not hired. At the summary judgment hearing, Dr. Campbell sought information regarding physicians recruited and actually hired. "Documents of and documents incidental to proposed contractual arrangements ... are not exempt from disclosure once a contract is entered into." S.C.Code Ann. § 30–4–40(a)(5) (Supp.2002).

■■■ The FOIA provides for attorney's fees to a prevailing party seeking relief under the act. Pursuant to § 30–4–100(b), "[i]f a person or entity seeking such relief prevails, he or it may be awarded reasonable attorney fees and other costs of litigation. If such person or entity prevails in part, the court may in its discretion award him or it reasonable attorney fees or an appropriate portion thereof." S.C.Code Ann. § 30–4–100(b) (1991); see also Society of Prof'l Journalists v. Sexton, 283 S.C. 563, 324 S.E.2d 313 (1984) (recognizing that section 30–4–100 allows award of attorney's fees to prevailing plaintiff in FOIA case). Under this section, the only prerequi-

site to an award of attorney's fees and costs is that the party seeking relief must prevail, in whole or in part. Where a plaintiff prevails on his request for declaratory relief, it is within the trial judge's discretion to award attorney's fees and costs to the plaintiff. *See Cockrell by Cockrell v. Trustees of Dist. 20 Constituent Sch. Dist.*, 299 S.C. 155, 382 S.E.2d 923 (1989); *see also Litchfield Plantation Co. v. Georgetown County Water & Sewer Dist.*, 314 S.C. 30, 443 S.E.2d 574 (1994) (as § 30–4–100(b) provides attorney's fees *may* be awarded, judge has discretion to award fees).

The decision on whether to award attorney's fees is discretionary in nature. The Circuit Court abused its discretion in this instance. The FOIA creates a mechanism for members of the public to obtain information from an obstinate or otherwise uncooperative public body. Where one party prevails in his or her claim for information under the FOIA, the Circuit Court has the discretion to award attorney's fees. Here, the court based its decision to deny attorney's fees on the fact that the issue regarding "trade secrets" was a novel, but legitimate, concern and the court's belief that Dr. Campbell only received a portion of the information he sought. Dr. Campbell was actually awarded all of the information he requested. The Circuit Court's finding regarding "trade secrets" was erroneous. The court's decision denying Dr. Campbell attorney's fees is in contrariety to the evidence. We reverse the Circuit Court as to this issue and remand the matter to the court for a new hearing to determine if Dr. Campbell was entitled to attorney's fees.

## CONCLUSION

We rule that physician salaries, compensation and the prices paid for physician practices are *NOT "trade secrets" exempt from the FOIA.* We hold that the information disclosed pursuant to the FOIA action is *not* subject to a protective order. Finally, the court erred in basing its decision to deny attorney's fees on its erroneous belief that Dr. Campbell was not entitled to attorney's fees where the issue was novel.

Accordingly, we **AFFIRM** the Circuit Court's order to disclose the information regarding physician salaries, compensation and prices paid for physician practices, **REVERSE** the

court's finding that this information constituted a "trade secret" exempt from the FOIA, **REVERSE** the protective order, **REVERSE** the court's denial of attorney's fees, and **REMAND** the case for a hearing to determine if Dr. Campbell was entitled to attorney's fees and costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF, J., and MOREHEAD, Acting Judge, concur.