# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Kenneth S. Hoffman, Linda J. Hoffman, Harold W. Walters, Terrence Whitlock, and Barrie Whitlock, Appellants,

v.

Saad Holdings, LLC, and Carl L. Jones, as Personal Representative of the Estate of Anne E. Jones, deceased, Respondents.

Appellate Case No. 2024-000794

---

Appeal From Anderson County
R. Scott Sprouse, Circuit Court Judge

---

Opinion No. Op. 6138
Heard November 12, 2025 – Filed February 18, 2026

---

**AFFIRMED**

---

Daniel L. Draisen, of The Injury Law Firm, PC, of Anderson, for Appellants.

Joshua Brent Raffini, of Pruitt & Pruitt, of Anderson, for Respondents.

---

**THOMAS, J.:** Kenneth S. Hoffman, Linda J. Hoffman, Harold W. Walters, Terrence Whitlock, and Barrie Whitlock (collectively, Homeowners) filed this declaratory judgment action against Saad Holdings, LLC, and Carl L. Jones, as Personal Representative of the Estate of Anne E. Jones, deceased (Respondents),

seeking to enjoin Gregory Saad[1] from walking across his undeveloped real property. Homeowners appeal the denial of their request for an injunction, arguing the circuit court erred in (1) failing to find restrictive covenants clear and unambiguous; (2) failing to declare what constitutes "residential purposes" under the covenants; (3) characterizing Saad's use of his property as in compliance with the covenants; and (4) interpreting the covenants as violative of public policy. We affirm.

## FACTS

The parties own property in the Providence Point subdivision on Lake Hartwell in Anderson County. All lots at issue are subject to restrictive covenants. The covenant relevant to this action provides as follows:

> LAND USE AND BUILDING TYPE:
> *No lot shall be used for other than residential purposes.*
> No residential building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling . . . . (Emphasis added.)

An amendment to the covenants further provides that "[n]o residence shall be constructed closer than twenty (20) feet to the front lot line, front lot line being defined as that line bordering public street, nor nearer than ten (10) feet to any side lot line."

Saad Holdings, LLC[2] purchased three lots in Plantation Point in 2021 from Jones. These lots were originally one lot at the entrance of the subdivision, and the lack of depth of the lots made home construction in compliance with the covenants difficult, if not impossible.

Saad applied for and was granted two dock permits by the U.S. Army Corps of Engineers – Lake Hartwell.[3] He ran power and water across his lots to the docks. The parties stipulated that the Corps owns the shoreline of Lake Hartwell and that each of Saad's docks is inside that shoreline. Furthermore, there was no evidence

---

[1] Although Carl Jones, as the Personal Representative of the Estate of Anne E. Jones, is a respondent, Saad Holdings, LLC is the primary respondent.
[2] Saad is the owner of Saad Holdings, LLC. Hereinafter, we reference Saad and the LLC as Saad.
[3] Every lot owner in Plantation Point has a dock.

that Saad was using the docks for a commercial activity; no structures were built on the lots; and Saad's sole use of the lots was to park on them and walk across them to access his docks. Homeowners filed this action, alleging Saad's use violated the covenants because his use was recreational, not residential.

At the hearing, Homeowners argued Saad could walk the property to maintain it or to get somewhere else, but he could not use it solely for recreational purposes. Homeowners further argued Saad's sole means of accessing his docks under the covenants would be to "go to a landing, get on a boat, and boat over to these docks." Homeowners admitted Saad was not creating a nuisance; however, they were concerned he could in the future.

Saad argued the amendment to the covenants solely affected Jones' lots and no other lots in the subdivision, making it impossible to build on those lots. He also argued the covenants intended to maintain the subdivision as a residential neighborhood and Homeowners based their complaint on one sentence taken from the covenants rather than looking at the covenants as a whole. According to Saad, one homeowner took the position that he could not even sit on his property to watch birds because it would violate the covenants. Saad maintained that he did not "recreate" on the property; rather, he walked across it to access his docks. Saad next argued that the harm to him under Homeowners' interpretation of the covenants so greatly exceeded any benefit received by Homeowners that injunctive relief should be denied. Saad finally argued any nuisance in the future, as potentially alleged by Homeowners, was speculative.

The court asked Homeowners, "[A]re you saying that [Saad] would be prohibited from having a picnic . . . or camping out . . . on his lot?" Homeowners answered, "Yes." Homeowners argued the property was unusable and the only reason Saad could even maintain it under the covenants was because otherwise it would become overgrown and create a nuisance. By order filed April 26, 2024, the circuit court found Saad's use of accessing the docks by walking across his property was not violative of the covenants and to interpret them in such a manner "would lead to an absurd result that violates public policy in that it would unreasonably interfere with the free use of property." Thus, the court denied the request for an injunction.[4] The court also denied Homeowners' motion for reconsideration. This appeal follows.

---

[4] The court also denied Saad's counterclaim for attorney's fees, finding no evidence was presented pertaining to the counterclaim.

**STANDARD OF REVIEW**

Our standard of review is governed as follows by *Hanold v. Watson's Orchard Property Owners Association, Inc.*, 412 S.C. 387, 395, 772 S.E.2d 528, 533 (Ct. App. 2015) (alteration in original), *aff'd*, 419 S.C. 162, 797 S.E.2d 47 (2017):

> "Declaratory judgments in and of themselves are neither legal nor equitable." *Campbell v. Marion Cnty. Hosp. Dist.*, 354 S.C. 274, 279, 580 S.E.2d 163, 165 (Ct. App. 2003). "The standard of review for a declaratory judgment action is therefore determined by the nature of the underlying issue." *Id.*
>
> "Restrictive covenants are contractual in nature." *Hardy v. Aiken*, 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006). An action to enforce restrictive covenants by means of injunctive relief, however, is an action in equity. *Cedar Cove Homeowners Ass'n v. DiPietro*, 368 S.C. 254, 258, 628 S.E.2d 284, 286 (Ct. App. 2006). In an equitable action, we may find the facts in accordance with our own view of the evidence. *Id.* "While this standard permits a broad scope of review, an appellate court will not disregard the findings of the [circuit] court, which saw and heard the witnesses and was in a better position to evaluate their credibility." *Buffington v. T.O.E. Enters.*, 383 S.C. 388, 391, 680 S.E.2d 289, 290 (2009).

**LAW/ANALYSIS**

**1.      Characterization of Use**[5]

Homeowners argue the circuit court erred in mischaracterizing the use of the property. We find Homeowners abandoned this issue because they cite no authority to support the argument. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting when a party fails to provide arguments or supporting authority for his assertion, the party is deemed to have abandoned the issue on appeal).

---

[5] Homeowners' third issue.

## 2. Residential Purposes[6]

Homeowners argue the circuit court erred in failing to address whether the covenant restricting use to residential purposes was clear and unambiguous and erred in failing to find Saad in violation of the covenant. Contrary to Homeowners' argument that the circuit court failed to address whether the covenant was clear and unambiguous, we first note the circuit court discusses the issue of ambiguity with citation to authority and finds Saad's use did not violate the covenants. To the extent the circuit court failed to specifically state the covenant was or was not ambiguous, we find no reversible error.

"Restrictive covenants are contractual in nature." *Hardy*, 369 S.C. at 166, 631 S.E.2d at 542. Thus, "the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." *Palmetto Dunes Resort v. Brown*, 287 S.C. 1, 6, 336 S.E.2d 15, 18 (Ct. App. 1985). "Words of a restrictive covenant will be given the common, ordinary meaning attributed to them at the time of their execution." *Taylor v. Lindsey*, 332 S.C. 1, 4, 498 S.E.2d 862, 863 (1998). However, "where the language of a restrictive covenant is equally capable of two or more constructions, that construction will be adopted which least restricts the property." *Hamilton v. CCM, Inc.*, 274 S.C. 152, 157–58, 263 S.E.2d 378, 381 (1980). This "historical disfavor of restrictive covenants by the law emanates from the widely held view that society's best interests are advanced by encouraging the free and unrestricted use of land." *Sea Pines Plantation Co. v. Wells*, 294 S.C. 266, 270, 363 S.E.2d 891, 893 (1987). "As with any other action on a contract, the party who seeks to enforce a restrictive covenant has the burden of proving that the non-moving party intended to create a covenant." *SPUR at Williams Brice Owners Ass'n v. Lalla*, 415 S.C. 72, 83–84, 781 S.E.2d 115, 121 (Ct. App. 2015).

Homeowners' primary argument is that Saad's use of the property is recreational rather than residential and the restrictive covenant restricts use of the land to residential use. Most cases in South Carolina discussing "residential use" in restrictive covenants concern residential vis-à-vis commercial use. *See, e.g.*, *Cothran v. Stroman*, 246 S.C. 42, 45, 142 S.E.2d 368, 369 (1965) (finding the operation of a beauty shop violated a covenant restricting use to "residential purposes"); *Kinard v. Richardson*, 407 S.C. 247, 266–67, 754 S.E.2d 888, 898 (Ct. App. 2014) (finding the use of the property as an equestrian center that sold horses violated the restrictive covenant that prohibited any use other than single-family

---

[6] Homeowners' first and second issues.

residential use); *Buffington*, 383 S.C. at 393–94, 680 S.E.2d at 291–92 (finding a car dealership's use of land for parking vehicles violated the covenant restricting use to "residential purposes"). However, we also note *Donald E. Baltz, Inc. v. R. V. Chandler & Co.*, 248 S.C. 484, 489, 151 S.E.2d 441, 444 (1966), in which our supreme court enforced restrictive covenants when the purchaser of a lot, which was restricted by a covenant prohibiting the use of the lot for anything except non-trailer residential purposes, built a road through the middle of the lot to access a mobile home located on a contiguous tract. The court found the use was "not a residential use within the meaning of the covenants." *Id*.

Saad cites other jurisdictions that have considered "residential purposes" in restrictive covenants. In *White v. Town of Emerald Isle*, 346 S.E.2d 176, 179 (N.C. Ct. App. 1986), covenants of a beach community subdivision restricted use to residential purposes except permitting hotels, motels, apartment houses or other buildings for the purpose of providing residence. The court found the building of a municipal parking lot by the Town did not violate the covenants, relying on the law mandating strict construction in favor of the unrestrained use of land and the fact that parking lots are commonly associated with the use of beaches. *Id*. at 178–79. Likewise, the Supreme Court of New Hampshire concluded a covenant restricting the use of property to a single-family dwelling per lot and for residential purposes only was not violated by a property owner that used an otherwise vacant lot solely for dock access. *Voedisch v. Town of Wolfeboro*, 612 A.2d 902, 905 (N.H. 1992). In finding the use of a dock is a usual residential use, the court stated, "Generally, covenants restricting the use of property to 'residential purposes' merely limit the use of the property to living purposes as distinguished from business or commercial purposes . . . ." *Id*.

We are persuaded by the reasoning of the North Carolina Court of Appeals in *Villazon v. Osborne*, 922 S.E.2d 498 (N.C. Ct. App. 2025). In *Villazon*, the plaintiff purchased a series of lots in a lake community governed by a restrictive covenant that provided that "[l]ots shall be used only for residential purposes." *Id.* at 501. The plaintiff also purchased a "lakefront lot in the community, where she would store her kayaks, 'have a dock,' and 'maybe entertain, have a barbecue.'" *Id*. After neighbors complained about the plaintiff's use of the lakefront lot, she filed an action for declaratory judgment seeking a ruling that her use did not violate the residential purposes covenant. *Id*. at 502.

In construing the covenant, the court found "no reading of the [covenant] that supports [the defendants'] insistence that the phrase 'residential purposes' necessarily 'requires habitation.'" *Id*. at 509. Furthermore, like Homeowners in

this case did, the defendants in *Villazon* "offer[ed] a plethora of possible extreme, imagined recreational uses that might be permitted in other hypothetical cases if [the p]laintiff's use of Lot 177 were allowed, such as 'ball fields, concert venues, dirt tracks, [and] paintball course[s].'" *Id.* at 510 (third and fourth alterations in original). The court found the suggested "'parade of horribles' . . . ignore[d] the well-settled rule of the interpretation of restrictive covenants that '[e]ach case must be determined on its own particular facts.'" *Id.* (quoting *Long v. Branham*, 156 S.E.2d 235, 242 (N.C. 1967)). The court accordingly affirmed the trial court's grant of a directed verdict to the plaintiff regarding the alleged violation of the residential purpose covenant. *Id.*

Here, we agree with Homeowners that the covenant is not ambiguous. However, based on the particular facts of this case, we disagree that Saad's use violated the covenant. Thus, we affirm the circuit court's finding that Saad was not in violation of the covenant.

### 3. Public Policy[7]

Homeowners argue the circuit court erred in finding their interpretation of the covenants violated public policy. Because we affirm the circuit court's finding that Saad was not in violation of the covenants, we need not address whether the covenant violated public policy. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when resolution of a prior issue is dispositive).

**CONCLUSION**

For the foregoing reasons, the order on appeal is

**AFFIRMED.**

**WILLIAMS, C.J., and CURTIS, J., concur.**

---

[7] Homeowners' fourth issue.