654 S.E.2d 87

**SOUTH CAROLINA ELECTRIC &
GAS COMPANY, Respondent,**

v.

**Linda A. HARTOUGH, a/k/a Linda Hartough Floyd, Appellant.**

**No. 4292.**

Court of Appeals of South Carolina.

Submitted May 1, 2007.

Decided Sept. 18, 2007.

Rehearing Denied Dec. 20, 2007.

413, SCACR, if a definite suspension is imposed. We have granted that request by separate order.

542

R. Thayer Rivers, Jr., of Ridgeland, for Appellant.

Gary C. Pennington and Jessica Clancy Crowson, both of Columbia, for Respondent.

BEATTY, J.

In this declaratory judgment action, Linda Hartough appeals the special referee's order finding South Carolina Electric and Gas (SCE & G) has a valid and enforceable option. She also appeals the special referee's award of attorney's fees to SCE & G. We affirm.[1]

## FACTS

On March 8, 2001, SCE & G entered into a contract with Hartough and Firelight Farm LTD, an entity wholly owned by Hartough, for an option to purchase 213.6 acres of real property (Farm Tract) located in Jasper County. The contract also granted SCE & G an option to purchase whatever interest Hartough had in an adjacent fifty-eight acre tract (Norton Tract). Paragraph 12 of the contract provided:

[T]he signing of this Option shall constitute consideration for an exclusive Option for Purchase to acquire any and all fee interest which Linda A. Hartough ... owns in the adjacent fifty-eight (58) acres ... with said consideration to be based on the value of $5,000 per acre and $2,500 per acre for high lands and wetlands, respectively.

The option provided that the final purchase price would be determined after an accurate field survey was performed to determine the amount of acreage in the lowlands and highlands and after determining Hartough's percentage of ownership in the Norton Tract. SCE & G paid Hartough $25,000

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

for the option to purchase the Farm and Norton Tracts. Section two of the contract provided the option would be valid until July 6, 2001. The parties later agreed to extend the deadline for the closing on the Farm Tract until September 14, 2001.

When the parties signed the option contract in March of 2001, Hartough did not possess any interest in the Norton Tract. It was not until April 12, 2001, when Hartough paid Wanda Johnson $50,000 that she acquired any interest. Johnson was a descendent of John Norton, the original owner of the Norton Tract. At the time of the purchase, the extent of Johnson's interest in the Norton Tract was uncertain and Hartough's purchase was known as an "heir's share." Hartough's interest in the Norton Tract could have been anywhere from as little as forty percent to as much as one hundred percent. A month later, Hartough instituted a quiet title and partition action against a plethora of people, mostly heirs of John Norton, who all claimed to have an interest in the property. Her stated reason for filing the action was to determine the extent of her interest in order to sell the property to SCE & G.

On September 14, 2001, SCE & G purchased the Farm Tract from Hartough for $1,275,000. During the signing of the contract for sale, Catherine Badgett, the attorney representing SCE & G at the closing, became concerned about the option to purchase the Norton Tract and wanted assurances that it would not be extinguished after the purchase of the Farm Tract was completed. Thayer Rivers, Hartough's attorney, assured Badgett the Norton Tract option still existed. Towards that end, Rivers drafted a letter dated September 19, 2001, confirming the existence of the option to purchase the Norton Tract. The letter provided: "This letter is to confirm our agreement that the Norton heir option to the power company is still in existence. As soon as this matter can be heard and the interest of my client determined, we will then set up a closing on that."

In March 2003, SCE & G became concerned regarding the lack of progress in the quiet title action, and it contacted Rivers by letter requesting he reaffirm the Norton Tract option. It appeared none of the parties to the quiet title action had any intention of moving the action forward. The

Norton heirs did not want the action to progress because they believed if Hartough was found to have an interest in the property they would all be forced to sell. Hartough did not want to move the action forward because she believed the land in the Norton Tract was worth more per acre than the price originally provided for by the contract. Rivers responded to SCE & G by letter dated March 21, 2003, stating that either the option to the Norton Tract had expired at the time of the expiration of the Farm Tract option, or the Norton Tract option contract had no expiration date, and thus, would not be valid under South Carolina law.

On May 15, 2003, SCE & G filed the present action seeking a declaratory judgment that the option to the Norton Tract was valid and enforceable. Additionally, SCE & G sought attorney's fees. Hartough answered, generally denying the option was valid.

Following a hearing on May 5, 2005, the special referee found the option was valid despite having no date of expiration. The special referee reasoned that under South Carolina law, an option must be exercised in a reasonable time if no time is specified. Therefore, no specified closing date was required. Further, the special referee concluded a reasonable time for the closing of the option would be after the quiet title action determined the extent of Hartough's interest. In addition, the special referee awarded SCE & G attorney's fees and costs. Hartough's motion for reconsideration was denied. This appeal followed.

## STANDARD OF REVIEW

Declaratory judgment actions are neither legal nor equitable; thus, the standard of review depends on the nature of the underlying issues. *Campbell v. Marion County Hosp. Dist.*, 354 S.C. 274, 279, 580 S.E.2d 163, 165 (Ct.App.2003). Because this action involves the interpretation of a contract, it is an action at law. *Barnacle Broad., Inc., v. Baker Broad., Inc.*, 343 S.C. 140, 146, 538 S.E.2d 672, 675 (Ct.App.2000). In an action at law tried without a jury, "our scope of review extends merely to the corrections of errors of law." *Id.* Therefore, this court will not disturb the trial court's findings unless they are found to be without evidence that reasonably

supports those findings. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

### I. Validity of Option Contract

■ Hartough alleges the special referee erred in finding the option to the Norton Tract was valid and enforceable. Specifically, Hartough argues the option is unenforceable because the option agreement fails to set a definitive date by which the option must be exercised. We disagree.[2]

■ Generally, option contracts have three main characteristics:

> (1) they are unilateral contracts where the optionor, for a valuable consideration, grants the optionee a right to make a contract of purchase but does not bind the optionee to do so; (2) they are continuing offers to sell, irrevocable during the option period; and (3) the transition of an option into a contract of purchase and sale can only be effected by an unqualified and unconditional acceptance of the offer in accordance with the terms and within the time specified in the option contract.

*Ingram v. Kasey's Assoc.,* 340 S.C. 98, 108, 531 S.E.2d 287, 292 (2000). If the option agreement "requires performance in a certain manner, time is of the essence and exact compliance with the terms of the option [is] required." *Id.* However, if the parties to an option agreement fail to "specify a time for performance, a reasonable time will be implied." *King v. Oxford,* 282 S.C. 307, 316, 318 S.E.2d 125, 130 (Ct.App.1984) (citing *Lindler v. Adcock,* 250 S.C. 383, 158 S.E.2d 192 (1967)); *see also* 17a Am.Jur. 2nd *Contracts* § 79 (2004) ("[I]f an option provision fails to impose a time limitation, courts will construe the provision to require that it be exercised within a reasonable time.").

■ Whether the length of time to exercise an option contract is "reasonable" depends on the particular facts and

---

**2.** We note the parties signed the option contract for the Norton Tract prior to Hartough acquiring an interest in the property. However, Hartough only argued before the special referee that the option failed for not stating an expiration date.

circumstances of a given case. *See Wall v. Huguenin,* 305 S.C. 100, 103, 406 S.E.2d 347, 349 (1991) (holding that a delay of thirteen years in exercising an option to repurchase family land was not unreasonable, considering the fact that the land was subject to two lawsuits and the option indicated it could be exercised when "convenient" for the optionee); *Carroll v. Page,* 264 S.C. 345, 351, 215 S.E.2d 203, 206 (1975) (noting that where the option for lessee to purchase the property if the lessor decided to sell it fixed no time for lessee's acceptance of the offer to sell, the delay of one year after lessee indicated he only wanted "a few days" to consider the option did not constitute the exercise of the option within a reasonable time); *Lindler,* 250 S.C. at 388, 158 S.E.2d at 195 (finding the delay of more than nine years after the option ripened was an unreasonable time to exercise the option and stating that "[w]hether there is unreasonable delay in accepting an option or an offer, and whether such delay is explained to the exclusion of negligence depends on all of the surrounding circumstances"); *see also Ridglea Interests, Inc. v. Gen. Lumber Co.,* 343 S.W.2d 490, 493 (Tex.Civ.App.1961) (noting that a reasonable time is such time as is necessary conveniently to do what the contract requires to be done as soon as circumstances will permit and that what is a reasonable time depends on the nature and character of the thing to be done, the circumstances of the particular case, and the difficulties surrounding its accomplishment).

In the instant case, the original contract does not specify a term for the expiration of the option. This does not render this option unenforceable, however, because we can imply that the option may be exercised within a reasonable time. As noted in the letter ratifying the option, a reasonable time to exercise the option would be after Hartough's interest in the Norton Tract was finally determined. Therefore, because the letter ratifying the contract clearly provides a method to determine the date by which the option was to be exercised, we find the special referee properly determined the option does not fail for failure to specify an expiration term because it can be exercised in a "reasonable time."

Hartough also alleges the special referee erred by determining a reasonable time for the option to be exercised was following the litigation of the quiet title action. Relying

on *Lindler v. Adcock,* 250 S.C. 383, 158 S.E.2d 192 (1967), she contends the quiet title action cannot be concluded within a reasonable time because it had already been stalled for five years and there was no evidence that it would go forward.

In *Lindler,* three physicians executed a written option on downtown property they owned as tenants in common. The 1949 option provided that survivors could buy the interest of any deceased party, or the interest of any party wishing to sell, at the original cost of the property. One physician sold his interest in the property to the remaining two a few years later. In 1955, one of the remaining two physicians died intestate. The final physician did not seek to exercise the option to purchase the deceased's interest in the property at the original cost until 1964. The *Lindler* court found the nine-and-a-half year delay in exercising the option after it ripened was unreasonable. *Lindler,* 250 S.C. at 388–89, 158 S.E.2d at 194–95.

Hartough's reliance on *Lindler* is misplaced. The physician in *Lindler* failed to exercise his option until nearly ten years after it had ripened. Hartough points out that she was interested in the Norton Tract for nearly ten years prior to obtaining an interest in the property and that the quiet title action had stalled for nearly five years prior to the hearing before the special referee. Thus, she argues, the long time period in which to exercise the option was unreasonable like the time period in *Lindler.* As noted in the option itself, SCE & G in the present case cannot exercise the Norton Tract option until Hartough's percentage ownership in the property has been determined, a survey performed, and a final price calculated based on her percentage of ownership. Thus, the option will not be ripe until the quiet title action is completed.

Further, we are cognizant of the fact that some quiet title actions can take years; however, in the present case, the action has failed to progress because of Hartough's own inaction. During her deposition, her response when asked if she had any intention of moving the quiet title action forward was, "No, I don't have any intentions at all right now." In light of the fact Hartough has failed to take any steps which would resolve the underlying action, we agree with the special referee that under the facts and circumstances of this case, a

"reasonable time" for the option to be exercised would be after the quiet title action has been adjudicated.

## II. Attorney's Fees

 Hartough argues the special referee erred in awarding attorney's fees. She contends SCE & G is barred from recovering attorney's fees because SCE & G did not specifically plead it was seeking attorney's fees pursuant to the option contract but merely stated it sought attorney's fees for bringing the action. We disagree.

 Generally, a party may not recover attorney's fees absent a contract or statute. *Blumberg v. Nealco, Inc.*, 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993). When an award of attorney's fees is based upon a contract between the parties, the determination of the fees is left to the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Seabrook Island Prop. Owners' Ass'n v. Berger*, 365 S.C. 234, 240, 616 S.E.2d 431, 434 (Ct.App.2005) (citing *Baron Data Sys., Inc. v. Loter*, 297 S.C. 382, 384, 377 S.E.2d 296, 297 (1989)). Further, a trial court may award costs in declaratory judgment actions as "may seem equitable and just." S.C.Code Ann. § 15–53–100 (2005).

The contract provided, "In the event litigation is commenced to enforce any rights under this Agreement or to pursue any other remedy available to either party, all reasonable legal expenses and other direct costs of litigation of the prevailing party shall be paid by the other party." Although SCE & G made a request in the complaint for "an award of attorney's fees and costs for the maintenance of this action which has been occasioned by [Hartough's] actions and conduct," SCE & G did not specifically plead the contract between the parties as the basis for its claim. The special referee awarded SCE & G attorney's fees and costs for maintaining the action but reserved determining the amount of attorney's fees until this action has been fully resolved.[3]

---

3. The record on this point is somewhat unclear because it does not contain a signed order continuing the issue of the amount of attorney's fees. However, both parties seem to agree the amount of attorney's fees is to be settled at a later date.

■ We note the issue of whether a party must specifically plead the basis for seeking attorney's fees was not ruled upon by the special referee. Although Hartough argued in her Rule 59(e), SCRCP, motion that attorney's fees are not permitted pursuant to the Declaratory Judgment Act, she did not argue SCE & G failed to specifically plead a contractual basis for the award of fees. Therefore, the argument is not preserved for our review. *Staubes,* 339 S.C. at 412, 529 S.E.2d at 546 (holding that issues not raised to and ruled upon by the trial court are not preserved for appellate review).

Moreover, even if SCE & G did not specifically plead attorney's fees pursuant to the contract, we find the special referee properly awarded attorney's fees. SCE & G commenced the action in order to determine the validity of the option pursuant to the contract. The contract permitted any prevailing party to seek attorney's fees in an action to enforce any right under the contract. In addition, the pleadings requested attorney's fees. Therefore, Hartough was apprised SCE & G would be seeking a recovery of fees if successful. Accordingly, the special referee did not err in awarding fees.

## CONCLUSION

For the foregoing reasons, we find the special referee did not err in concluding a valid and enforceable option existed. Moreover, the special referee properly awarded SCE & G attorney's fees and costs. Accordingly, the order of the special referee is

**AFFIRMED.**

ANDERSON, and HUFF, JJ., concur.