663 S.E.2d 38

**George H. SEAGO, III, and Real Estate Information Service, Inc., Appellants,**

v.

**HORRY COUNTY, Respondent.**

**No. 26505.**

Supreme Court of South Carolina.

Heard March 5, 2008.

Decided June 16, 2008.

416

418

Jay Bender and Holly Palmer Beeson, both of Baker, Ravenel and Bender, of Columbia, for Appellants.

Emma Ruth Brittain and Matthew R. Magee, both of Thompson and Henry, of Myrtle Beach, for Respondent.

Justice BEATTY.

This case concerns whether further dissemination of public documents obtained pursuant to a Freedom of Information Act (FOIA) request may be restricted where the government entity claims the information is copyright-protected under the federal copyright law. We affirm the circuit court's finding that, while public information must be granted pursuant to FOIA, a public entity may restrict further commercial distribution of the information pursuant to a copyright. However, we reverse and remand for further proceedings on the question regarding the fees charged.

## FACTUAL BACKGROUND

George Seago, III, and his company, Real Estate Information Service, Inc., (collectively, Appellants), collect electronic mapping data from various government entities across the state for their website and allow customers, including real estate developers, realtors, mortgage companies, appraisers, attorneys, and others, access to the information from their website for a fee. The fees range from $350 to $3,000 per year, and up to $40,000 per year for one particular subscriber. Subscribers are issued a password to access the website and are prohibited from sharing their passwords with others.

Horry County's geographic information systems (GIS) department developed a digital database to combine several layers of information onto one digital photographic map of the county. The GIS department took over 4,000 orthophoto, or aerial images, of the county and compressed them into a seamless collage in the "Mr. Sid" computer format. The GIS department processed flat file data,[1] including data regarding planimetric layers,[2] parcels, and topography, through a spatial database engine (SDE) to convert the flat file data into lines, points, or images on the photographic map. As information regarding the land in the County is constantly changing, the information in the flat files has to be constantly updated. Thus, there is not one document; a map of a specific region or local has to be "created" by running the requested flat file information through the database to produce the requested map. According to Timothy Oliver, Assistant Director of the GIS department, this process is unique to Horry County and requires creativity and judgment on the part of the GIS department to know how to combine the different flat files to create an integrated, aerial-photographed map that precisely identifies the location of parcels, bodies of water, streets, buildings, hydrology, and topography.

Horry County developed its digital database system at a cost of $7.5 million dollars. Because of the constantly chang-

---

1. "Flat file" data is a computer file spreadsheet that only contains numbers and information. It is not in the format of a map.

2. "Planimetric" data includes things such as building footprints, rivers, bodies of water, hydrology, and streets.

ing information regarding property in the County, it costs nearly $1 million each year to update the information in the flat files. To protect its investment and the integrity of the data from manipulation or alteration by subsequent users, Horry County applied for copyrights for its planimetric layers data and orthophoto Mr. Sid data.[3]

On December 5, 2001, Seago made a FOIA request for a copy of the "Orthophoto Coverage in Mr. Sid format (County-wide)" so he could place the digital photographic map on his website for use by his customers. In January 2002, Lisa Bourcier, Director of Public Information for Horry County, informed Seago that he could obtain a copy of the information for a fee of $100, but he would have to sign a licensing agreement acknowledging Horry County's copyright on the information and restricting any further commercial use without prior written consent. Seago did not object to the fee, but he refused to sign the licensing agreement. Seago did not obtain the requested information.

On August 29, 2002, Seago again made a FOIA request for full-county coverage GIS data for planimetric layers, topographic layers, and parcel layers in ArcInfo Shapefile or ArcInfo export formats. Seago included a check for $125, which he had previously been informed was the charge for the data, and his request specifically noted that he would only sign a licensing agreement if Horry County could show authority to copyright public information. On September 20, 2002, Bourcier returned Seago's check and informed him that Horry County could not process his request at that time because the requested information contained "copyrightable elements," and Horry County had retained copyright attorneys to research and copyright what was appropriate. On October 1, 2002, the Horry County Council held their first reading of a proposed ordinance to require a special fee schedule and a licensing agreement for the distribution of GIS information.

---

3. The record indicates the copyrighted works were "published" in January 1999 but not registered until February 2003. It appears from the record that the copyrights retroactively applied to the works originally produced in January 1999. In any event, Appellants do not challenge Horry County's ability to obtain a copyright; they challenge the effect of the copyright on their FOIA claim and the lower court's ability to interpret the copyright law.

Seago continued to receive letters from Bourcier, alternately informing him: (1) that his request could not be processed at that time; (2) that his request was for copyrightable information; (3) that the requested information was not subject to FOIA because the county possessed no document that "provides the complex information you seek" and it would have to be created; and (4) that Horry County was attempting to pass the fee and licensing ordinance. After Seago initiated the underlying lawsuit for a FOIA violation, Bourcier wrote him a letter pointing out Seago's misunderstanding that he was being denied access and stating Seago's FOIA requests would have been granted if only he had signed the licensing agreement.

Appellants' lawsuit sought a declaratory judgment that: Horry County's charges for copies exceeded the actual cost of making copies; the restrictions on the use of the documents by the County was an *ultra vires* act; and there is no FOIA exception for records containing copyrightable elements. Horry County counterclaimed for copyright infringement and later removed the matter to federal court. After the parties argued the case in front of the federal magistrate, the district court adopted the magistrate's recommendation that the case was strictly an application of state FOIA law and dismissed the matter.

In state court, the parties agreed to refer the matter to the master-in-equity, and Horry County later dismissed its counterclaims. In an amended order, the master determined: (1) the requested information constituted a public record subject to disclosure under FOIA because the definition of "public record" is broad enough to include the documentary materials that the flat file records could be exported into; (2) Horry County could copyright its materials, and the copyright protections could be read harmoniously with FOIA, because the right to access public documents is separate and distinct from any right to subsequent distribution; (3) FOIA is satisfied once access is granted to the information; and (4) Horry County could impose a licensing fee in excess of the cost of reproducing the data "where, as under the circumstances of this case, the data is being released for purposes that extend beyond initial access to a public record as allowed by FOIA,"

and in light of Seago's testimony that he had no objection to the fees being charged to him. This appeal follows.

## SCOPE OF REVIEW

"A declaratory judgment action under the FOIA to determine whether certain information should be disclosed is an action at law." *Campbell v. Marion County Hosp. Dist.*, 354 S.C. 274, 280, 580 S.E.2d 163, 165 (Ct.App.2003) (citing *S.C. Tax Comm'n v. Gaston Copper Recycling Corp.*, 316 S.C. 163, 447 S.E.2d 843 (1994)). In an action at law tried without a jury, this Court reviews the lower court only to correct errors of law. *Crary v. Djebelli*, 329 S.C. 385, 388, 496 S.E.2d 21, 23 (1998). The trial court's factual findings will not be disturbed on appeal unless there is no evidence in the record that would reasonably support the findings. *Harkins v. Greenville County*, 340 S.C. 606, 621, 533 S.E.2d 886, 893 (2000).

## DISCUSSION[4]

### I. Restrictions on subsequent use under FOIA

Appellants argue the master erred in finding Horry County could restrict subsequent distribution of public records because: (1) FOIA does not include an exception for disclosure for records containing "copyrightable elements;" and (2) FOIA does not authorize restrictions on subsequent use.

The purpose of FOIA is to protect citizens from secret government activity. *Campbell*, 354 S.C. at 280, 580 S.E.2d at 166. FOIA allows the public to "learn and report fully the activities of their public officials at a minimum cost or delay" by providing the public access to public documents[5] or meetings. S.C.Code Ann. § 30–4–15 (2007). Pursuant to FOIA, any person has the right to copy public records, unless an exception applies, at a fee "not to exceed the actual cost of

---

4. Appellants raise five issues, including a catch-all issue complaining about all the master's factual findings. For the sake of clarity, we have combined them into three.

5. Horry County does not challenge the master's finding that the GIS data, no matter what format it was in, constituted a "public record" subject to FOIA.

searching for or making copies of records." S.C.Code Ann. § 30–4–30(a), (b) (2007). Any government agency attempting to avail itself of an exemption bears the burden of proving the exemption applies. *Evening Post Publ'g Co. v. City of North Charleston*, 363 S.C. 452, 457, 611 S.E.2d 496, 499 (2005). The exemptions to FOIA should be narrowly construed to ensure public access to documents. *Id.*

■ FOIA grants the public an immutable right to access public records. However, this right of access is viewed differently where commercial use of public information is concerned. FOIA specifically limits the subsequent commercial use of information obtained pursuant to the Act in some situations: (1) public records containing the telephone number, address, and name of handicapped persons may not be disclosed where the information is to be used for person-to-person commercial solicitation of such handicapped person; and (2) information contained in a police incident report, or in an employee salary schedule, or the home addresses and phone numbers of employees and officers of public bodies may not be used for commercial solicitation. S.C.Code Ann. § 30–4–40(a)(2) (2007) (providing the government may exempt from disclosure contact information for handicapped persons if it is to be used for commercial solicitation); S.C.Code Ann. § 30–4–50(B) (2007) (prohibiting the use of information in a police report, employee salary schedule, or the home addresses of public body employees and officers for commercial solicitation).

While it is true that copyright-protected data is not listed as an exemption to FOIA disclosure, Horry County does not deny this fact and there is evidence in the record to support the master's finding that Horry County was not attempting to restrict initial access to the material by Appellants. Thus, the question before the Court is whether Horry County may restrict the *subsequent commercial distribution* of public information pursuant to the copyright law.

In deciding this question, the master relied upon the federal case of *County of Suffolk, New York v. First American Real Estate Solutions*, 261 F.3d 179 (2d Cir.2001). In *Suffolk*, Suffolk County sued First American for copyright infringement for copying and selling Suffolk County's copyrighted tax maps. The *Suffolk* court found that states and political subdi-

visions may obtain copyrights, and maps could be copyright-protected to the extent it could be shown that it contained original material, research, and creative compilation. *Suffolk,* 261 F.3d at 187–88. The court next considered whether the New York Freedom of Information Law (FOIL) abrogated Suffolk County's copyright. Noting that when FOIL was enacted it was recognized that states could possess copyrights, the court found it significant that FOIL was silent as to the effect of requiring disclosure on preexisting copyrights the agency possessed and what may occur after the agency discloses the records. *Id.* at 189. The court found the extent of the state agency's FOIL obligation is to make its records available for public inspection and copying, stating that it "is one thing to read this provision to permit a member of the public to copy a public record, but it is quite another to read into it the right of a private entity to distribute commercially what it would otherwise, under copyright law, be unable to distribute." *Id.*[6]

█ Because FOIA does not prohibit the copyrighting of some specialized public information, we agree with the *Suffolk* court's reasoning that the county may obtain copyrights, and maps can be copyright-protected to the extent it can be shown that it contains original material, research, and creative compilation. *Suffolk,* 261 F.3d at 187–88. The originality and creativity necessary to create and maintain the system is present in this case. Further, the purpose of FOIA is satisfied once the public information is provided. It does not violate FOIA for a public entity to copyright specially-created digital data and to restrict subsequent *commercial* use as long as the information is provided initially to the requesting

---

6. We note there is a similar case from Florida in which the Florida state court distinguished *Suffolk* and held exactly the opposite. *Microdecisions, Inc., v. Skinner,* 889 So.2d 871 (Fla.Dist.Ct.App.2004). In *Microdecisions,* a real estate company seeking county GIS tax maps for commercial use brought suit against the county appraiser who refused to provide the public maps without the signing of a licensing agreement. The court noted, "Florida's Constitution and its statutes do not permit public records to be copyrighted unless the legislature specifically states they can be." *Microdecisions, Inc.,* 889 So.2d at 876. Unlike the case in *Microdecisions,* while our Legislature and state constitution do not specifically allow counties to copyright, they do not specifically prohibit it, either.

person or entity. If an entity is allowed to copyright the specially-created data, it is logical that the governmental entity should be allowed to enact ordinances to restrict further commercial dissemination of the information in order to protect the copyright. *See* 17 U.S.C.A. § 106 (2005) (providing that copyright holders have the exclusive right to allow certain uses, and thus impose subsequent use restrictions).

However, Appellants point to the Court of Appeals' decision in *Campbell v. Marion County Hospital District*, 354 S.C. 274, 580 S.E.2d 163 (Ct.App.2003), to support their argument that FOIA prohibits any subsequent use restriction on public information. In *Campbell*, the circuit court ruled that Dr. Campbell could get access to the county hospital's records of physician recruitment, physicians' salaries, and purchase prices of practices pursuant to FOIA, but the circuit court ruled such information constituted "trade secrets" such that the court restricted Dr. Campbell from subsequently disclosing the information to third parties. *Campbell*, 354 S.C. at 278–79, 580 S.E.2d at 165. The Court of Appeals reversed the circuit court's protective order, finding the information did not constitute "trade secrets" and that information obtained pursuant to FOIA could not be protected by a restraining order. *Id.* at 287, 580 S.E.2d at 169. While the *Campbell* opinion correctly noted that FOIA does not provide for the prohibition on further dissemination of information obtained, the case did not deal with the interplay of federal copyright restrictions and licensing on subsequent commercial dissemination of the information. Thus, *Campbell* is not applicable to the underlying case.

Accordingly, we agree with the master that FOIA and copyright law can be "read harmoniously" and that the Horry County ordinance allowing the licensing restrictions on further commercial dissemination of the GIS data does not violate FOIA. The ability to copyright specially-created data, as long as the public is given access to the public data, does not frustrate the purpose of FOIA.

## II. Jurisdiction to determine copyright claim

■ Appellants argue the master was without jurisdiction to make any findings of fact regarding copyrights because it is within the exclusive jurisdiction of federal courts.

 Federal district courts have original jurisdiction to hear any civil actions "arising under" any Act of Congress relating to copyrights. 28 U.S.C.A. § 1338(a) (1999). The mere fact that a case concerns a copyright does not necessarily mean the case comes within the exclusive jurisdiction of the federal courts. *Enhanced Computer Solutions, Inc. v. Rose,* 927 F.Supp. 738, 739 (S.D.N.Y.1996). An action arises under the federal copyright law where the complaint seeks a remedy specifically granted by the Copyright Act or requires construction of the Act. *Merchant v. Levy,* 92 F.3d 51, 55 (2d Cir.1996). "Many disputes over copyright ownership will arise under state law and involve no federal questions." *Arthur Young & Co. v. City of Richmond,* 895 F.2d 967, 969 (4th Cir.1990).

In the underlying case, Horry County counterclaimed for copyright infringement, sought damages, and removed the case to federal court. At the argument before the district court magistrate, Appellants asserted they were not challenging Horry County's ability to own a copyright, but they were instead challenging the ability to assert copyright protection to circumvent FOIA. Appellants argued that the case was not a matter of whether a copyright existed, but it was rather a matter of exclusive state law concerning whether Horry County could withhold public information. Appellants later argued that whether Horry County has the authority to obtain a copyright is a question of state law and the extent of such copyright is a federal question. The district court adopted the magistrate's recommendation that the case be remanded to state court because the case did not involve the "validity, scope, or infringement of a copyright claim" and the case related specifically to state law requests pursuant to FOIA.

Despite moving to remand the matter to state court, arguing before the magistrate that they were not challenging the ability of Horry County to obtain a copyright, and failing to appeal the district court's finding that the case did not involve the validity of a copyright, Appellants now argue the master was without jurisdiction to find Horry County had a copyright and was entitled to protect its interests. In light of Appellants' previous concession, the fact that the case concerned matters of interpreting state FOIA law, and the fact that the case did not concern a challenge under the Copyright Act, we

find the master had jurisdiction to make a finding that a copyright existed. The Appellant's argument is wholly without merit.

## III. Licensing fee

Appellants argue the master erred in finding the licensing fees charged by Horry County did not violate FOIA because: (1) the fees exceed the actual costs for making copies; and (2) the fees are not charged uniformly for the same records.

FOIA provides that a "public body may establish and collect fees not to exceed the actual cost of searching for or making copies of records," and the fees must be uniform for copies of the same record or document. S.C.Code Ann. § 30–4–30(b) (2007). "The records must be furnished at the lowest possible cost to the person requesting the records." *Id.* However, the public body may decide not to charge a fee where it determines the waiver of the fee is in the public interest because "furnishing the information can be considered as primarily benefitting the general public." *Id.*

The Horry County ordinance provides different licensing fees for copying GIS data, depending on the intended use. Timothy Oliver, Assistant Director of Horry County's GIS department, testified before the master that Horry County provides GIS data to certain public entities at no cost, including the U.S. Fish and Wildlife Service, the City of North Myrtle Beach, and Ocean and Coastal Resource Management. Oliver also testified that while the money charged for the record may exceed the actual cost of copying it, the cost is associated with the copyright license use and not the FOIA request. Horry County places the license fees collected in one account for use in maintaining the system and had collected nearly $30,000 from 2003 until the September 2005 hearing. Seago testified at the hearing that he had no objection to the fees charged, tendering checks in the amounts of $100 and $125, and his only complaint was the attempt to restrict subsequent commercial use of the information.

Noting that Seago did not object to the fees being charged to him, the master found the County could impose a licensing fee in excess of actual cost of reproduction "where, as under

the circumstances of this case, the data is being released for purposes that extend beyond initial access to a public record as allowed by FOIA."

First, we find no FOIA violation where Horry County waives fees to public entities. The FOIA statute specifically provides that copying fees can be waived where it is in the interest of the public. S.C.Code Ann. § 30–4–30(b) (2007). Providing these documents for free to public entities that intend to use them for public benefit and not for commercial gain would certainly fit under this category.

The question of whether Horry County can charge "licensing fees" that would exceed the actual copying costs pursuant to a FOIA request is a more difficult question. FOIA requires the actual copying fees be charged at the lowest possible cost to the requesting party. Horry County avers that the county did not charge Appellants for documents requested pursuant to the FOIA, the charge was for the license to commercially distribute the copyrighted data. Appellants argue classifying the fee schedule as a "licensing fee" instead of a copying fee is merely a matter of semantics where the fee is for the production of a public document. Appellants are technically correct that Horry County never provided the documents/data to Appellants in the first place, as is required under FOIA. However, after they tendered the requested fee, Horry County informed Appellants that signing the licensing agreement was a prerequisite to the production of the data. Thus, it is clear that the fee was not for the production of the document; it was for the subsequent commercial distribution of the document.

FOIA limitations on the fee structure for providing copies of public records are applicable only to those copies that are provided in keeping with the spirit of FOIA. FOIA fee provisions do not contemplate subsequent commercial distribution of copyright-protected documents for profit.

FOIA is unambiguous in setting forth the method of determining fees for providing copies contemplated by the Act. This method does not change depending on the status of the requester. However, FOIA does not control fees for subsequent commercial distribution for profit of copyrighted public records.

The undisputed evidence in the record is that the licensing fees charged for the GIS data exceeded actual copying costs. However, no evidence was introduced as to what those actual copying costs would be in non-licensing situations. The fees in this case, while in excess of actual copying costs, do not appear to be exorbitant. Without knowing the actual costs of producing a copy of the GIS data, we cannot determine whether the fees charged frustrate the intent of FOIA in light of the intended commercial use and Horry County's desire to protect its copyright. Accordingly, we find it is more appropriate to remand the fee question for the determination of what the actual copying costs would be and whether the fees charged were so out of line with the actual copying costs such that the fees would frustrate the intent of FOIA.

## CONCLUSION

Horry County is not prohibited from obtaining copyrights on the County's GIS data which was specially-created; Horry County could use its copyright to protect the GIS data from subsequent commercial use without violating FOIA. Although Horry County could use its copyright to protect the GIS data from subsequent commercial distribution for profit, it may not refuse to honor the initial FOIA request. Further, the master had jurisdiction to determine the effect of Horry County's copyright on the FOIA action. The question of whether the fees charged violate FOIA cannot be determined by the record before us because there is no evidence regarding what the actual copying costs would be. Without this information, we cannot determine whether the fees frustrate the purpose of FOIA. We remand the matter to the lower court for a determination of the amount of the fees, whether the fees charged were so out of line with the actual cost as to frustrate FOIA, and whether charging different fees based on the identity of the requester amounted to a violation.

MOORE, Acting Chief Justice, WALLER, J., and Acting Justices E.C. BURNETT, III and JAMES R. BARBER, concur.