676 S.E.2d 139

**LASER SUPPLY AND SERVICES, INC., Appellant,**

v.

**ORCHARD PARK ASSOCIATES, d/b/a Orchard Park Apartments, Respondent.**

No. 4503.

Court of Appeals of South Carolina.

Heard Oct. 7, 2008.

Decided Feb. 19, 2009.

328

E. Wade Mullins, III, of Columbia, for Appellant.

R. Patrick Smith, of Greenville, for Respondent.

GEATHERS, J.:

This breach of contract action arises from a dispute over the completion of remediation construction at the Orchard Park Apartments in Greenville, South Carolina. Appellant Laser Supply & Services, Inc. (Laser) seeks review of the circuit court's order awarding damages and attorney fees to Respondent Orchard Park Associates (Orchard). The essence of Laser's appeal is a challenge to the ruling that the parties'

contract called for completion of work on a "per building" basis, rather than completion of work when the specified quantities of materials had been exhausted. We affirm in part, reverse in part, and remand for additional findings on the issue of attorney fees and costs.

## FACTS/PROCEDURAL HISTORY

On or about March 4, 2003, Laser and Orchard entered into a contract for roof repair work at the Orchard Park Apartments in Greenville (the roof contract). Later, on April 1, 2003, the parties entered into a separate contract for exterior wood siding repair and replacement at the same site (the siding contract). Incorporated into the siding contract is a document entitled "EXHIBIT I—SCOPE OF WORK." Exhibit I limits the quantities of materials that may be used for the work and requires Orchard's approval of a change order prior to Laser's use of quantities exceeding those limits. Notably, the contract affirms that, prior to its execution, Laser had inspected the premises for job conditions. However, Laser did not perform such an inspection prior to executing the contract.

Exhibit I also includes a payment schedule allowing Laser to submit invoices after the completion of work on specified buildings and requiring Orchard to remit payment within twenty-one days of each invoice date. Laser began the remediation work in April 2003 and submitted its first invoice to Orchard on April 11, seeking payment for the completion of work on the clubhouse, shop, and four apartment buildings, even though Laser did not actually complete work on those buildings until sometime after May 1. Laser's first five invoices were approved for payment soon after Laser submitted them. However, Orchard did not actually process payments on those invoices until August 8.

ConAm Management Corporation (ConAm) was responsible for administering both contracts on behalf of Orchard. ConAm's Southeast Regional Maintenance Director, David Young (Young), drafted the contracts and oversaw Laser's work progress. Soon after Laser began the remediation, Young noticed workmanship defects that remained unresolved for several weeks, despite his repeated requests for correc-

tions. He also noticed that Laser was unnecessarily exceeding the quantity limits on materials. On May 1, Young requested Laser to submit a daily or weekly wood usage control sheet. Nonetheless, Laser did not submit usage logs as the project progressed.

On June 2, Young directed Laser to cease further work on the buildings until it addressed and resolved certain workmanship defects. On June 19, Young presented a punch list to Laser and set June 27 as a deadline for resolution of the listed items. Laser did not meet that deadline. On July 31, Laser submitted a request for a change order to allow for additional materials to complete the siding contract, but Orchard denied this request.

On August 12, Laser sent an e-mail to ConAm's Regional Portfolio Manager, John Deneen, and to Young notifying them that August 15 would be Laser's last day on the job. Orchard later notified Laser that it was terminating the contract and that it would hire a replacement contractor to finish the project. By November 20, Orchard signed a remediation contract with another contractor, Services Unlimited. Services Unlimited completed the work by December 19, and Orchard paid Services Unlimited a total of $41,400.

Several months later, Laser filed an action for breach of contract, along with several other causes of action, against Orchard and ConAm. Orchard responded with a breach of contract counterclaim and several other counterclaims. Orchard and ConAm then filed separate motions for summary judgment on all of Laser's claims on the ground that Laser failed to obtain the necessary licensure for the work required by the contracts. The circuit court granted Orchard's and ConAm's summary judgment motions and entered judgment against Laser on all of its claims. Laser appealed the circuit court's summary judgment order; however, this court dismissed the appeal because of Laser's failure to comply with Rule 207, SCACR.[1]

---

1. Rule 207, SCACR, requires the appellant to make satisfactory arrangements in writing with the court reporter for furnishing the transcript and to order the transcript within ten days after the date of service of the notice of appeal.

As to Orchard's counterclaims, Orchard elected to abandon all of its claims except the breach of contract claim relating to the siding contract. The circuit court conducted a trial on the breach of contract claim and awarded Orchard damages in the amount of $36,795 and attorney fees and costs in the amount of $86,923.87.[2] The circuit court later issued a Supplemental Order reducing the damages award to $24,195. This appeal follows.

## ISSUES

1. Did the circuit court err in concluding that the parties to the siding contract intended for the work to be completed on a "per building" basis?

2. Did the circuit court err in finding that Laser breached the siding contract?

3. Did the circuit court err in awarding damages to Orchard in the amount of $24,195?

4. Did the circuit court err in awarding attorney fees and costs to Orchard in the amount of $86,923.87?

## STANDARD OF REVIEW

A cause of action for breach of contract seeking money damages is an action at law. *Eldeco, Inc. v. Charleston County Sch. Dist.*, 372 S.C. 470, 476, 642 S.E.2d 726, 729 (2007) (internal citations omitted). In an action at law tried without a jury, this court reviews the trial court's decision to correct only errors of law. *Seago v. Horry County*, 378 S.C. 414, 422, 663 S.E.2d 38, 42 (2008) (internal citations omitted). The trial court's factual findings will not be disturbed on appeal unless there is no evidence in the record that would reasonably support its findings. *Id.*

## LAW/ANALYSIS

### I. Parties' intent for completion of work

Laser contends that the circuit court erred in concluding that the siding contract unambiguously required completion of the work on a "per building" basis. Laser argues that (1) the

---

2. The parties consented to a bench trial in lieu of a jury trial.

contract was ambiguous with regard to the required scope of work; and (2) extrinsic evidence showed that the parties intended for the work to be considered complete when the quantities of materials specified in the contract had been exhausted. We disagree.

When interpreting a contract, a court must ascertain and give effect to the intention of the parties. *Chan v. Thompson*, 302 S.C. 285, 289, 395 S.E.2d 731, 734 (Ct.App. 1990). To determine the intention of the parties, the court "must first look at the language of the contract...." *C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Comm'n*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988).

When the language of a contract is clear and unambiguous, the determination of the parties' intent is a question of law for the court. *See Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997) (internal citations omitted). Interpretation of a contract is governed by the objective manifestation of the parties' assent at the time the contract was made, rather than the subjective, after-the-fact meaning one party assigns to it. *Bannon v. Knauss*, 282 S.C. 589, 593, 320 S.E.2d 470, 472 (Ct.App.1984). A court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully. *Lindsay v. Lindsay*, 328 S.C. 329, 340, 491 S.E.2d 583, 589 (Ct.App. 1997).

Whether an ambiguity exists in the language of a contract is also a question of law. *S.C. Dep't of Natural Res.s v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001). A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who (1) has examined the context of the entire integrated agreement; and (2) is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business. *Hawkins*, 328 S.C. at 592, 493 S.E.2d at 878. Once the court decides that the language is ambiguous, evidence may be admitted to show the intent of the parties. *McClellanville*, 345 S.C. at 623, 550 S.E.2d at 303 (internal citations omitted). The determination of the parties' intent is then a question of fact. *Id.*

■■■ In the instant case, the siding contract's language concerning the scope of work is incapable of more than one meaning, when viewed objectively by a reasonable person who has examined the context of the entire contract and is aware of the practices and terms as generally understood in the construction industry. *See Hawkins,* 328 S.C. at 592, 493 S.E.2d at 878. Exhibit I includes a payment schedule allowing invoices to be submitted **only after** the completion of work on specified buildings. Exhibit I also limits the quantities of materials that may be used for the work and requires Orchard's approval of a change order prior to Laser's use of quantities exceeding those limits.

■■■ Further, the second and third pages of Exhibit I to the siding contract contain the following provisions:

This contract is issued as a UNIT PRICE/NOT TO EXCEED CONTRACT and all repairs shall be itemized by building and invoiced at the scheduled price. A log of material quantities used at each building shall be kept and initialed by both the Contractor and Regional Maintenance Director and shall accompany the respective invoices. Should any unforeseen conditions arise which require materials of dimensions and classification not included within this Contract, Contractor shall provide as [sic] estimate of costs and Regional Portfolio Manager shall be notified and shall verify actual conditions and receive ConAm's approval before Contractor commences work in this area.

. . .

THIS IS A TURNKEY OPERATION AND NO ADDITIONAL CHARGES SHALL BE APPLIED TO THIS CONTRACT.

(emphasis in original).[3]

Reading the contract as a whole, the only reasonable interpretation of the scope of work provisions is that the parties

---

3. A "turnkey operation" (or "turnkey contract") is known in the construction industry as a fixed-price, schedule-intensive construction contract in which the contractor agrees to a wide variety of responsibilities. *Black's Law Dictionary* 344 (8th ed.2004). A "unit-price contract" is a contract in which payment is made at specified unit rates for each of the different types of work performed or materials furnished. *See L–J, Inc. v. S.C. State Highway Dep't,* 270 S.C. 413, 425, 242 S.E.2d 656, 661

intended for remediation work to be performed on all of the buildings listed in the payment schedule. If the parties had intended for completion of work to be reached when the specified quantities of materials had been exhausted, there would have been no logical reason for them to have included language addressing change orders for use of quantities exceeding specified limits.

 Laser argues in the alternative that, if the contract was unambiguous, the circuit court improperly considered extrinsic evidence. Laser assigns error to the circuit court's reference in its order to certain testimony and exhibits—outside the four corners of the contract—to support its interpretation of the contract.[4] It is reasonable to infer that the circuit court was setting forth alternative grounds for its interpretation of the contract. In any event, any error in considering the extrinsic evidence was harmless because the circuit court's interpretation based on the extrinsic evidence presented at trial was consistent with the contract's language. *See Jensen v. Conrad,* 292 S.C. 169, 172, 355 S.E.2d 291, 293 (Ct.App.1987) (holding that a judgment will not be reversed for insubstantial errors not affecting the result).

## II. Laser's Breach

 Laser argues that the circuit court erred in finding that Laser breached the contract because Orchard did not give Laser an opportunity to complete the contract requirements and because Orchard waived the contract requirements.[5] We disagree.

---

(1978) (dictum). In unit price contracts, there are usually items of work which will be required to be performed, but the precise dimensions of the work cannot be determined in advance of performance. *Id.* A party estimates the units of work or material of each type anticipated to be required for completion of the project. *Id.* at 425–26, 242 S.E.2d at 661.

4. *See In re Estate of Holden,* 343 S.C. 267, 275, 539 S.E.2d 703, 708 (2000) (holding that the parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument).

5. Laser also contends that Orchard substantially breached the contract by delaying payment on several invoices. The circuit court did not

■ The determination of whether a party has breached a contract is a question of fact. *See Jones v. Ridgely Commc'ns, Inc.,* 304 S.C. 452, 455–56, 405 S.E.2d 402, 404 (1991) (affirming jury instruction stating that issues of whether there was a breach of contract or whether there was cause to terminate employee were questions of fact). Likewise, the determination of whether one's actions constitutes waiver is a question of fact. *See Madren v. Bradford,* 378 S.C. 187, 194, 661 S.E.2d 390, 394 (Ct.App.2008). The trial court's factual findings will not be disturbed on appeal unless there is no evidence in the record that would reasonably support the findings. *Seago,* 378 S.C. at 422, 663 S.E.2d at 42.

■ The siding contract allows Orchard to terminate the contract for cause. The contract's definition of "cause" reads, in pertinent part, as follows:

[T]he term "cause" shall include, without limitation, Contractor's refusal or neglect to supply a sufficient number of properly skilled workmen or a sufficient quantity of materials of proper quality at any time. Contractor's failure to properly perform all Work in keeping with the progress of the Owner's general construction schedule for the project or to properly perform any term, covenant or condition contained in this Contract.

The record contains competent evidence that Laser breached the siding contract and that cause existed for the contract's termination as early as the beginning of April 2003. At that time, Laser was providing defective workmanship and, thus, was not properly performing the required work or abiding by the contract's express terms. Young had to make numerous requests for corrections and had to warn Laser of possible termination. Laser's contention that Orchard did not give Laser an opportunity to complete the punch list work is unpersuasive in light of the evidence that Young made repeated requests, throughout the months of April, May, and

---

directly address this question in its order, and Laser did not raise the question in its motion for reconsideration. Therefore, this question is not preserved for review. *See Hardaway Concrete Co., Inc. v. Hall Contracting Corp.,* 374 S.C. 216, 234, 647 S.E.2d 488, 497 (Ct.App. 2007) (holding that issue was not preserved for review where master did not address issue in order and appellant did not file a motion for reconsideration to obtain a ruling on the issue).

June, for Laser to correct deficiencies in its work. Additionally, as early as April 11, Laser submitted an invoice for work that had not actually been completed, in contradiction of the contract's terms.

Laser's waiver argument is also unavailing. A waiver is the intentional relinquishment of a known right. *Arcadian Shores Single Family Homeowners Ass'n, Inc. v. Cromer*, 373 S.C. 292, 301, 644 S.E.2d 778, 783 (Ct.App.2007). Admittedly, the record contains some evidence that Young, as a representative of Orchard, may have waived certain contract requirements by his verbal communications with Laser's representatives. However, there was equally competent evidence that Orchard did not waive the requirements relating to the quality of the work to be performed, which Laser breached.

In sum, there is competent evidence in the record that reasonably supports the circuit court's finding that Laser breached the siding contract. Therefore, we must affirm that finding. *See Seago*, 378 S.C. at 422, 663 S.E.2d at 42.

### III. Damages

Laser argues that the siding contract's termination clause does not provide for the damages awarded by the circuit court because it does not address calculation of damages in the event that the property owner's costs to complete the contract exceed the contract balance. We disagree.

The siding contract's termination clause states, in pertinent part, the following:

> In the event of termination for cause, Contractor shall not be entitled to receive any further payment until the entire project of which the Work is a part is completely finished. At that time, if the amount earned but not paid to Contractor before termination plus the unearned portion of the Contract Price at the time of termination **exceeds** the cost incurred by Owner in finishing the Work, **Owner shall pay to Contractor the amount of such excess.** If the amount earned but not paid to Contractor before termination plus the unearned portion of the Contract Price at the time of termination **exceeds** such cost, **Contractor shall pay to Owner the amount of such excess.** The cost incurred by Owner shall include, for purposes of the calculations re-

ferred to in the two preceding sentences, Owner's cost of furnishing materials and finishing the Work, Owner's attorneys' fees and any damages incurred by Owner by reason of Contractor's default, plus a markup of ten percent (10%) general overhead and ten percent (10%) profit on all of such items of cost.

(emphasis added).

The circuit court found that the second and third sentences in the termination clause contemplate the same factual scenario, but yet mandate opposing outcomes. The court implicitly held that this particular paragraph in the contract was ambiguous and found that there was a scrivener's error in the third sentence in the termination clause. The circuit court found that the parties intended for the word "exceeds" in the third sentence to mean "exceeded by" after hearing testimony that the parties considered the termination clause to operate as a typical termination clause in the context of a construction project.[6] In effect, the circuit court reformed the siding contract. *See Jordan v. Foster,* 264 S.C. 382, 386, 215 S.E.2d 436, 438 (1975) (holding that trial court properly reformed instrument after hearing testimony concerning scrivener's error in drafting instrument).

The circuit court's reformation of the third sentence in the termination clause is supported by competent evidence. Witnesses for both parties testified that the contract required the contractor to pay the property owner the amount of the cost to complete the contract less the contract balance.

■■■ Laser also argues that there was insufficient evidence to support Orchard's claimed replacement costs. We disagree. At trial, Orchard introduced a copy of its contract with Services Unlimited, dated November 20, 2003. That contract sets the total price for the work at $41,400. Further, there was testimony that, by December 19, Services Unlimited had completed the remediation work that Laser began in April. The record also shows payments totaling $41,400 that Orchard made to Services Unlimited.

6. It is reasonable to infer that the circuit court, and the witnesses who testified on this point, meant to say *"is* exceeded by."

■ Additionally, Laser contends that Orchard failed to minimize its liquidated damages because of its delay in completion of the project. We disagree. The evidence shows that the length of time between Laser's last week on the project (August 15) and the date of Orchard's contract with Services Unlimited (November 20) was reasonable due to the necessity of rebidding the work and allowing potential contractors to inspect the site.

In sum, the damages award was supported by competent evidence and was properly calculated according to the formula in the siding contract's termination clause.

### IV. Attorney Fees

■ Laser argues that the award of attorney fees and costs, $86,923.87, is not supported by the record because (1) the roof contract is not in the record, and, thus, there is no evidence that any fees or costs associated with the roof contract would be supported by a contractual provision allowing attorney fees; (2) the amount of attorney fees and costs awarded is unreasonable in light of the amount of the damages awarded ($24,195); (3) Orchard obtained only $24,195 out of the $123,930 it was seeking throughout the litigation and was unsuccessful on several of its claims; and (4) the contractual provision for attorney fees does not authorize an award of litigation costs. There is some merit to the first ground raised by Laser, but we disagree with Laser's remaining contentions.

■ The review of attorney fees awarded pursuant to a contract is governed by an abuse of discretion standard. *See S.C. Elec. & Gas Co. v. Hartough,* 375 S.C. 541, 550, 654 S.E.2d 87, 91 (Ct.App.2007) (concluding that, when an award of attorney fees is based upon a contract between the parties, the determination of the fees is left to the discretion of the trial court and will not be disturbed absent an abuse of discretion). An appellate court will not reverse an award unless it is based on an error of law or is without any evidentiary support. *See Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997) (holding that an abuse of discretion occurs when there is an error of law or a factual conclusion that is without evidentiary support). When an attorney's services and the value of those

services are determined by the trier of fact, an appeal will not prevail if the findings of fact are supported by any competent evidence. *Baron Data Sys., Inc. v. Loter,* 297 S.C. 382, 384, 377 S.E.2d 296, 297 (1989).

## A. *Reasonableness of Fee Amount*

In *Baron,* the South Carolina Supreme Court held that the trial court did not abuse its discretion in awarding attorney fees to the plaintiff, even though the award was greater than the plaintiff's recovery. The court concluded that the trial court had properly applied the relevant factors, which are as follows: (1) the nature, extent, and difficulty of the legal services rendered; (2) the time and labor necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the fee customarily charged in the locality for similar legal services; and (6) the beneficial results obtained. *Id.* at 384–85, 377 S.E.2d at 297–98.

Here, the siding contract provision authorizing attorney fees states,

> Contractor shall be liable to Owner for all attorneys' fees expended by Owner in furtherance of Owner's rights against Contractor under this Contract. In the event of any litigation or arbitration arising out of the subject matter of this Contract or the Work (whether instituted by Owner, Contractor or another entity), **the party to this Contract determined by the court or arbitrator to be primarily liable or at fault shall be obligated to pay the attorneys' fees of the other party to this Contract,** the amount of which shall be determined by the court or arbitrator and included in the judgment.

(emphasis added).

At trial, counsel for Orchard, Donald Harper, presented an affidavit setting forth itemized time entries and itemized expenses that his office incurred in representing Orchard in this case from the time that Laser filed its complaint through the beginning of July 2006. The affidavit also explained the nature and difficulty of the services rendered, counsel's professional standing in the community, and the rates customarily charged in the Greenville area for similar legal services. However, the affidavit does not sufficiently indicate how much

pre-trial time was solely attributable to the roof contract, for which no evidence of a contractual provision authorizing fees was introduced at trial due to Orchard's abandonment of claims related to the roof contract. Further, the affidavit does not sufficiently indicate which expenses, if any, were solely attributable to the roof contract. Therefore, this court has no way of discerning whether the time and expenses solely attributable to the roof contract were de minimis or much more significant (for example, lengthy segments of a deposition devoted to the roof contract only).

On its face, Harper's affidavit, combined with the beneficial results obtained, generally supports the reasonableness of the attorney fee award. However, if the affidavit includes any fees or expenses that are attributable solely to the roof contract, that part of the award would not be supported by the evidence. The roof contract was not presented at trial, and, therefore, the record contains no evidence of a contractual provision authorizing an award for attorney fees and expenses related solely to the roof contract.

It is possible that much of counsel's time on the case was attributable to both contracts simultaneously or solely the siding contract. However, any portion of the award that is attributable solely to the roof contract would not be supported by the record. Therefore, it is necessary to remand the issue of attorney fees to the circuit court to determine if the affidavit includes any fees or expenses that are attributable solely to the roof contract. *See Blumberg v. Nealco, Inc.*, 310 S.C. 492, 494, 427 S.E.2d 659, 660–61 (1993) (holding that reversal of fee award and remand is appropriate where there is a lack of evidence). While this may not be an easy task for Harper, and while he may have to resort to rough estimates, this task is a necessary one, especially in light of the amount of fees requested.

### B. *Costs*

Laser argues that the circuit court erroneously included expenses in the attorney fees award. However, Laser does not cite any authority supporting its argument. Therefore, Laser has abandoned this argument. *See* Rule 208(b)(1)(D), SCACR (requiring the citation of authority in the argument

portion of an appellant's brief); *Hunt v. Forestry Comm'n,* 358 S.C. 564, 573, 595 S.E.2d 846, 851(Ct.App.2004) (holding that issues raised in a brief but not supported by authority are deemed abandoned and will not be considered on appeal).

## C. *Disparity with Damages Award*

 The disparity in the amount of the damages award and the attorney fees award, by itself, does not invalidate the latter. *See Rice v. Multimedia, Inc.,* 318 S.C. 95, 101, 456 S.E.2d 381, 385 (1995) (addressing disparity of damages award and fee award and noting that the amount of recovery and the contingency of compensation are only two of the six factors to be considered by the trial court in determining an appropriate attorney fees award); *Baron Data,* 297 S.C. at 385, 377 S.E.2d at 297–98 (concluding that attorney fees award was supported by the record despite the fact that it exceeded damages award). With the exception of any possible fees and expenses attributable solely to the roof contract, the amount of the fee award was reasonable in light of all of the *Baron* factors applied by the circuit court. Therefore, its disparity with the damages award does not demonstrate an abuse of discretion on the part of the circuit court.

## CONCLUSION

The circuit court properly concluded that the siding contract unambiguously required the work to be completed on a "per building" basis. Further, the circuit court properly concluded that Laser breached the siding contract and that Orchard was entitled to damages in the amount of $24,195. Therefore, we affirm those conclusions in the circuit court's order.

As to the attorney fees award, any part of the award that is attributable solely to the roof contract is not supported by the record. The circuit court must make additional findings on the time that Harper spent, and the expenses incurred by Harper, that are attributable solely to the roof contract and modify the award accordingly. Therefore, we reverse the attorney fees award and remand the case to the circuit court for additional findings.[7]

---

7. This court need not address Appellant's remaining arguments, as they are either non-dispositive or manifestly without merit. *See* Rule

Accordingly, the circuit court's order is

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

HEARN, C.J., and HUFF, J., concur.

220(b)(2), SCACR (stating that a point that is manifestly without merit need not be addressed); *Whiteside v. Cherokee County Sch. Dist. No. One*, 311 S.C. 335, 340–41, 428 S.E.2d 886, 889 (1993) (holding that remaining issues need not be addressed when the resolution of a prior issue is dispositive).